*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA FUR GALLERY, INC., | ) | |
| | ) | Supreme Court No. S-16132 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-14-03039 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TOK HWANG, | ) | |
| | ) | No. 7164 – March 31, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: Cabot Christianson, Law Offices of Cabot Christianson, P.C., Anchorage, for Appellant. Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I.      INTRODUCTION

A sublessee entered into an agreement containing an option to purchase the lessee's interest in the lease and leasehold improvements. When the sublessee attempted to exercise the option the lessee declined to sell, claiming the option was unenforceable. The sublessee sued, seeking, among other things, to enforce the option provision. The

superior court held that the provision was too uncertain to enforce either as an option or as an agreement to negotiate. The sublessee appeals; we affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

Tok Hwang owns a lessee interest in, and related improvements on, a commercial lot (the leasehold) near the Denali National Park entrance. Hwang leases the lot from a third party for $20,000 annually. Hwang subleased the leasehold to Alaska Fur Gallery, Inc. in April 2012. The sublease (the lease) provided that Alaska Fur would pay $55,000 annual rent for a three-summer term. The disputed provision stated, in full: "Lease includes an option to purchase premises with lease amount to be applied to negotiated purchase price."

In 2014 Manuel Hernandez, one of Alaska Fur's owners, sought to exercise the purchase option. Alaska Fur retained certified appraiser E. Chilton Hines to appraise the leasehold as "a basis for discussion with Hwang" about the purchase price. Hines valued the leasehold at $150,000 to $155,000. He noted that the appraisal was difficult because he was not given building plans, locals were reluctant to share information about property values, and information about sales of comparable properties was non-existent. Although Hines's appraisal did not include a fair market rental rate, he expressed that $55,000 per year was "very high and above market in my judgment."

Hernandez later stated in an affidavit that he "was aware that $55,000 was far higher than the fair rental rate," but he had agreed to that rate when negotiating the lease because Alaska Fur "anticipated exercising the option to purchase," and "it was important to [Alaska Fur] that the lease provided that rental payments were a credit to the purchase price if the option was exercised." Hernandez further stated that after the appraisal Hwang "refused to negotiate the purchase price or any aspect of the option to purchase," and the parties failed to reach an agreement about selling the leasehold. In

a letter to Alaska Fur, Hwang's attorney asserted that no "price or terms were ever agreed to between the parties," and that Alaska Fur was not "entitled to application of any of the rent to any of the purchase price for the [leasehold]."

Alaska Fur filed suit, alleging that Hwang had breached the lease by refusing to negotiate for the sale of the leasehold and by not applying the rental payments to the purchase price. Alaska Fur sought an order transferring the leasehold from Hwang to Alaska Fur "for no additional consideration."

Hwang moved for dismissal and for summary judgment, arguing that the option did not comply with the statute of frauds and that any agreement to negotiate was unenforceable. Alaska Fur also moved for summary judgment, claiming that Hwang's refusal to negotiate violated the implied covenant of good faith and fair dealing and an implied agreement to negotiate in good faith. Alaska Fur proposed that the court remedy the breach of those duties by declaring the appraised value be the leasehold purchase price. Alaska Fur alternatively requested damages in the amount of the difference between its rental rate and the fair market rental rate.

Although the parties' arguments focused on the statute of frauds and whether the disputed option provision created a duty to negotiate, the superior court ruled that the option provision was unenforceable as written. The court deemed price, or at least a method to calculate price, "an essential term of a contract." The court found no evidence the parties intended that the purchase price be the appraised fair market value; because there was no price or method for determining price, the court determined that the option provision therefore was unenforceable. The court further ruled that the option provision could not be enforced as an agreement to negotiate because the parties had provided no means of resolving negotiation disputes. Because the court found the option provision unenforceable, it did not reach the leasehold value issue or whether rent should have been applied to the purchase price.

Alaska Fur appeals the superior court's summary judgment decision.

## III.  STANDARD OF REVIEW

"We review questions of summary judgment de novo."[1]  "We treat the interpretation of contract language as a question of law and interpret the language de novo."[2]  "When applying the de novo standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[3]

## IV.  DISCUSSION

The parties' arguments on appeal are similar to those before the superior court.  We nonetheless look directly to the substance of the superior court's order and affirm its determination that the provision, by its own language, is too indefinite to enforce either as an option or as an agreement to negotiate.

### A.  The Provision Is Not Enforceable As A Purchase Option.

The superior court ruled that the option to purchase the leasehold was unenforceable because it contained neither a purchase price nor a method of determining the purchase price.  Contracts must be sufficiently definite to enforce.  Although we recognize that "contracts tend to be skeletal," we will not enforce a contract when "the character of a gap in an agreement manifests failure to reach an agreement rather than

---

[1]     *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 338-39 (Alaska 2005) (citing *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety*, 91 P.3d 240, 244 (Alaska 2004)).

[2]     *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011) (citing *Norton v. Herron*, 677 P.2d 877, 880 (Alaska 1984)).

[3]     *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (quoting *Russell ex rel. J.N. v. Virg–In*, 258 P.3d 795, 802 (Alaska 2011)).

a sketchy agreement, or where gaps cannot be filled with confidence that the reasonable expectations of the parties are being fulfilled."[4] Although we have the power to "fill gaps in contracts to ensure fairness where the reasonable expectations of the parties are clear,"[5] we will not "impose on the parties any performance to which all the parties did not or would not have agreed."[6]

We have filled gaps in contracts when we could determine with reasonable certainty what the parties intended.[7] In *City of Kenai v. Ferguson* we enforced a lease provision that the future rent amount "shall be subject to re-negotiation," with no specification how to determine the new amount.[8] We determined that by expressly calling for renegotiation every 5 years over the course of the 55-year lease, the parties reasonably intended the rental value to "adjust[] to fluctuations in market conditions."[9] And in that case the lessee's substantial investment in the property, in reliance on the lease, supported the superior court's decision to "imply a reasonable fair market rent if

---

[4]     *Rego v. Decker*, 482 P.2d 834, 837-38 (Alaska 1971) (first citing *Ansorge v. Kane*, 155 N.E. 683 (N.Y. 1927); then citing *Blanchard v. Detroit, Lansing, & Lake Mich. R.R. Co.*, 31 Mich. 43 (1875); and then citing 5A ARTHUR L. CORBIN, CONTRACTS § 1174, at 293 (1964)).

[5]     *Davis v. Dykman*, 938 P.2d 1002, 1007 (Alaska 1997) (first citing *Rego*, 482 P.2d at 837; then citing *Yeon St. Partners v. Envtl. Consulting Servs., Inc.*, 865 P.2d 1325, 1327 (Or. 1993)).

[6]     *Id.* (citing *Rego*, 482 P.2d at 837).

[7]     *See Prokopis v. Prokopis*, 519 P.2d 814, 818 (Alaska 1974) (granting specific performance of oral contract because "we think the reasonable expectations of the parties are readily ascertainable").

[8]     732 P.2d 184, 185, 188 (Alaska 1987).

[9]     *Id.* at 188.

necessary."[10] In *Rego v. Decker* we enforced an option to purchase that included detailed information about the transaction, like the purchase price, the terms of payment, the form of deed and title insurance, and the impact of lease termination on the option.[11] Although the option was silent about security provisions, we determined that "the decree can be fashioned to provide that the plaintiff furnish adequate security for his agreed performance," filling a small gap to "achiev[e] justice between the parties."[12]

We have declined to fill gaps in cases when the parties' intent was less evident. In *Davis v. Dykman* we held that an insurance settlement offer for policy limits plus Rule 82 attorney's fees based on the value of an anticipated jury verdict was too uncertain to enforce without "a specific method for arriving at an anticipated jury verdict."[13] We declined to fill that gap because it was "an essential term to which the parties did not agree."[14] Likewise in *Valdez Fisheries Development Ass'n v. Alyeska Pipeline Service Co.* we held that a letter failing to specify the price and duration of a proposed lease "preclude[d] finding a meeting of minds."[15]

In this case the reasonable expectations of the parties are not clear enough to order specific performance. The option provision is less than skeletal, containing

---

[10] *Id.*

[11] 482 P.2d at 835-36, 838.

[12] *Id.* at 838 (first citing 5A CORBIN, *supra* note 4, § 1137, at 98, 101; then citing *City of La Follette v. La Follette Water, Light, & Tel. Co.*, 252 F. 762 (6th Cir. 1918); and then citing *Tayloe v. Merchs.' Fire Ins. Co. of Baltimore*, 50 U.S. 390, 405 (1850)).

[13] 938 P.2d 1002, 1007 (Alaska 1997).

[14] *Id.* at 1007.

[15] 45 P.3d 657, 665-67 (Alaska 2002) (citing *Davis*, 938 P.2d at 1006).

neither a purchase price nor a method for determining a purchase price;[16] it fails to mention fair market value, appraised value, negotiation processes, or payment terms, and to provide any guidance for either the parties or a court attempting to enforce it. The superior court found no evidence that the parties intended the purchase price to be the appraised fair market value. Unlike *Rego* the option provision contains no key terms, so enforcing the provision would go far beyond filling in one missing piece.[17]

The only factor weighing in Alaska Fur's favor is its stated reliance on the option when it agreed to pay what it allegedly knew "was far higher than the fair rental rate."[18] But we have held that "testimony as to [parties'] subjective intentions or understandings will normally accomplish no more than a restatement of their conflicting positions."[19] Hernandez's after-the-fact affidavit does not demonstrate Alaska Fur's intent upon entering into the contract because "such self-serving statements are not considered to be probative."[20] Moreover, any alleged departure from fair market rent does not show that ordering sale of the leasehold at no additional consideration would fulfill the parties' reasonable expectations.[21] Based on these facts we cannot say that the

---

[16]     *See id.*; *Davis*, 938 P.2d at 1007-08.

[17]     *See* 482 P.2d at 838.

[18]     *See City of Kenai v. Ferguson*, 732 P.2d 184, 188 (Alaska 1987).

[19]     *Jarvis v. Ensminger*, 134 P.3d 353, 361 (Alaska 2006) (quoting *Sprucewood Inv. Corp. v. Alaska Hous. Corp.*, 33 P.3d 1156, 1162 (Alaska 2001)).

[20]     *Dimeff v. Estate of Cowan*, 300 P.3d 1, 11 (Alaska 2013) (quoting *Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981)).

[21]     Alaska Fur's alternative request for damages of "the $105,000 excess of the rental payments over the fair rental value," based on the claim that the fair market rental value of the leasehold is $20,000 rather than $55,000, is misleading at best. The

(continued...)

option provision is anything more than a non-binding statement of the possibility of purchasing the leasehold.

**B.     The Provision Is Not Enforceable As An Agreement To Negotiate.**

Alaska Fur argues that the term "negotiated purchase price" created an enforceable agreement to negotiate, and that Hwang breached that agreement by refusing to negotiate. Hwang claims that no such agreement was created, and that even if an agreement existed, negotiations occurred but were unsuccessful.

We will enforce an agreement to negotiate only if it contains a "specific way of resolving . . . differences,"[22] as well as a "basis for determining . . . breach or for giving an appropriate remedy."[23] If we cannot "discern when the agreement to negotiate has been breached," then we cannot enforce it.[24] Even when an agreement meets this standard, each party "retain[s] the ability to say 'no' to the terms proposed by the other

---

[21]     (...continued)
appraiser noted that $55,000 annual rent was probably "above market," but he made no appraisal of fair market rental value for the leasehold with improvements, merely stating that $20,000 was an appropriate rate for ground rent. Although the superior court later relied on Alaska Fur's incorrect statement that the fair market rental rate, rather than the ground rent, was $20,000, neither Alaska Fur's incorrect assertion of the leasehold's rental value nor any other part of the record provides a basis for damages. Alaska Fur also asks that the superior court address issues of "revenue and expenses" on remand, without further explanation, but we find no reason to remand that issue.

[22]     *Davis v. Dykman*, 938 P.2d 1002, 1008-09 (Alaska 1997).

[23]     *Id.* at 1008-09 (first citing *Ohio Calculating, Inc. v. CPT Corp.*, 846 F.2d 497, 501 (8th Cir. 1988); then citing *W. Airlines, Inc. v. Lathrop Co.*, 499 P.2d 1013, 1019 (Alaska 1972)).

[24]     *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 667 (Alaska 2002) (citing *Davis*, 938 P.2d at 1009).

party,"[25] and thus "an agreement to negotiate is not an agreement to agree."[26]  Finally, recovery for breach of an agreement to negotiate is limited to "costs associated with the negotiations themselves."[27]

The disputed provision here fails to meet the standard for an agreement to negotiate.  The lease's only reference to negotiation is the phrase "negotiated purchase price."  Merely mentioning negotiation does not create an enforceable agreement to negotiate.[28]  The superior court correctly noted that the provision did not "create a method for resolving a dispute about the purchase price."  The parties themselves disagree about the definition of "negotiation" and whether any negotiation occurred, demonstrating the lease's lack of clarity.  And even if we chose to interpret the word "negotiated" to create a binding agreement, Alaska Fur has claimed no damages associated with the negotiations themselves.  Alaska Fur cannot use failure to negotiate as an avenue to obtain an award of the leasehold.  We therefore affirm the superior court's ruling that the provision did not create an enforceable agreement to negotiate.

## C.    Hwang Did Not Breach The Duty Of Good Faith And Fair Dealing.

Alaska Fur claims the implied covenant of good faith and fair dealing created a duty that Hwang "enter into good faith negotiations for the sale of the [leasehold]."  A "covenant of good faith and fair dealing is implied in all contracts in Alaska," and it "prevents each party from doing anything that will injure the right of the

---

[25]    *Davis*, 938 P.2d at 1009.

[26]    *Valdez Fisheries*, 45 P.3d at 667 (citing *Davis*, 938 P.2d at 1009).

[27]    *Id.*

[28]    *See id.* at 663, 667 (holding letter stating intent to "begin the process of negotiating a contract" was not an enforceable agreement to negotiate); *Davis*, 938 P.2d at 1008-09 (holding letter stating party was "willing to work . . . and negotiate" was not an enforceable agreement to negotiate).

other to receive the benefits of the agreement."[29]  But the covenant's purpose "is to effectuate the reasonable expectations of the parties, not to alter or add terms to the contract,"[30] and it "will not create a duty where one does not exist."[31]  Because we hold that the disputed provision was unenforceable as either an option to purchase or an agreement to negotiate, Hwang did not breach any duty or injure any right by refusing to negotiate or sell the leasehold.  As the superior court noted, "both [Alaska Fur] and [Hwang] accepted the risk that they would be unwilling to agree upon a purchase price and retained the opportunity to say no to a purchase price that they found unsatisfactory."  We will not interpret the implied covenant to impose a duty to negotiate or sell the leasehold contrary to the parties' reasonable expectations.

## V.    CONCLUSION

We AFFIRM the superior court's decision.

---

[29]    *Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 267-68 (Alaska 2009) (first citing *Casey v. Semco Energy Inc.*, 92 P.3d 379, 384 (Alaska 2004); then citing *Ellingstad v. State, Dep't of Nat. Res.*, 979 P.2d 1000, 1009 (Alaska 1999)).

[30]    *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003) (citing *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1141 (Alaska 1999)).

[31]    *Casey*, 92 P.3d at 385 (quoting *Lorenz v. CSX Corp.*, 736 F.Supp. 650, 656 (W.D.Pa. 1990)).