*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GAVORA, INC., | ) | |
| | ) | Supreme Court No. S-17705 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-16-01898 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CITY OF FAIRBANKS, | ) | |
| | ) | No. 7575 – December 30, 2021 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Michael Kramer and Robert John, Kramer and Associates, Fairbanks, for Appellant. Cameron Jimmo and Cameron Leonard, Perkins Coie LLP, Anchorage, for Appellee.

Before: Winfree, Maassen, Carney, and Borghesan, Justices. [Bolger, Chief Justice, not participating.]

WINFREE, Justice.

## I.     INTRODUCTION

A real estate company acquired an existing long-term lease with a purchase option for a municipality-owned property. Dry-cleaning businesses operating on the property contaminated the groundwater both prior to and during the real estate company's involvement. The municipality knew about, but did not disclose, groundwater contamination at nearby sites when the real estate company ultimately

purchased the property. A state agency later notified the real estate company and the municipality of their potential responsibility for environmental remediation. The real estate company sued the municipality in federal district court; that court entered findings of fact, determined that the parties were jointly and severally liable for the contamination, and apportioned remediation costs. The real estate company also sued the municipality in state court for indemnity and further monetary damages, alleging that the municipality had misrepresented the property's environmental status during purchase negotiations. The superior court ruled in the municipality's favor, and the real estate company appeals. Seeing no error, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Background Facts

Gavora, Inc. is a Fairbanks-based real estate holding company that has owned properties in Alaska, Hawaii, and Washington. In 1974 Gavora acquired a commercial mall business that held a lease for property owned by the City of Fairbanks, and in 1976 the City approved the lease's assignment to Gavora. Much later Gavora exercised the lease's purchase option, ultimately purchasing the property in 2002.

A dry-cleaning business was a mall tenant pre-existing the lease's assignment to Gavora, and Gavora continued subleasing to dry-cleaning tenants for about 35 years. Dry-cleaning tenants contaminated groundwater with tetrachloroethylene, also known as perchloroethylene, (PCE) and trichloroethylene (TCE). In 2009 the Alaska Department of Environmental Conservation (ADEC) notified the City and Gavora that they were potentially liable for environmental remediation related to the groundwater contamination.

Gavora subsequently sued the City in federal district court to apportion liability for environmental contamination remediation costs under the Comprehensive

Environmental Response, Compensation, and Liability Act (CERCLA).[1] The federal district court concluded that under CERCLA the City and Gavora were jointly and severally liable for the groundwater contamination's environmental remediation costs, establishing the City's fault for 55% and Gavora's fault for 45%.[2] The federal district court found that a "substantial majority of the contamination" was caused by Gavora's dry-cleaning tenants, "estimat[ing] that between 80% and 90% of the total on-site . . . contamination was from [dry-cleaning] operations . . . from 1976 to approximately 2001."[3]

## B. Proceedings

Gavora later sued the City in superior court for misrepresentation, fraud, breach of contract, breach of implied covenant of good faith and fair dealing, breach of implied warranty of fitness for public use, implied indemnity, and negligence. Gavora alleged that the City either "intentionally, negligently, or innocently [affirmatively] misrepresented the [mall] property as environmentally clean" or by omission "misrepresented" it as "uncontaminated" prior to Gavora purchasing it. Although the parties agreed that the federal district court's factual findings were binding — and we rely on those facts in the following discussion — they presented additional evidence. The superior court ruled for the City on all major issues. We discuss only those issues and superior court rulings relevant to this appeal.

### 1. Credibility determination

The superior court found that the City did not actively deceive Gavora

---

[1]    42 U.S.C. §§ 9601-9675.

[2]    *Gavora, Inc. v. City of Fairbanks* (*Federal Findings*), No. 4:15-cv-00015-SLG, 2017 WL 3161626, at *9 (D. Alaska July 7, 2017).

[3]    *Id.* at *2.

during the purchase negotiations. The court was bound by the earlier finding that City Development Manager Patrick Smith, the City's primary negotiator, knew in 1999 about groundwater contamination at a City-owned apartment complex property near the mall. But the court found Smith "credibly testified that [during negotiations] he did not 'make the connection' between" the mall property and a 2001 environmental engineering report indicating that the apartment complex contamination originated offsite. The court reasoned that Smith may not have "connect[ed] the dots" because he negotiated the mall property sale about a year after reviewing the report and the deal was rushed after Gavora had threatened to sue the City if the sale could not be completed on Gavora's time line.

## 2. Negligent misrepresentation by omission

The superior court determined that the "City had no duty to disclose the contamination" to Gavora under the Restatement (Second) of Torts § 551, which in essence states that a seller who fails to disclose a known material fact during a business transaction is liable as if the seller had made an affirmative misrepresentation *if the seller has a duty to disclose the fact*.[4] Section 551(2) discusses five situations creating a duty to exercise reasonable care to disclose,[5] and in this case §§ (a) and (e) are at issue. Under (a) it arises when a "fiduciary duty or other similar relation of trust and

---

[4]    *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1202 (Alaska 1998) (noting that in *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985) "[w]e . . . adopted, verbatim" the rule set out in the Restatement that "[o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability [as for an affirmative misrepresentation] *if, but only if, he is under a duty to the other* to exercise reasonable care to disclose the matter" (emphasis and last alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 551 (AM. L. INST. 1977))).

[5]    RESTATEMENT (SECOND) OF TORTS § 551(2)(a)-(e) (AM. L. INST. 1977).

confidence" exists between the parties. And under (e) it arises when the seller knows both that the buyer is "about to enter into" a transaction based on a mistaken understanding of "facts basic to the transaction" and that the buyer "would reasonably expect a disclosure of those facts" because of either "the relationship between them, the customs of the trade[,] or other objective circumstances."

The superior court found that the parties did not have a "special relationship of trust" under § 551(2)(a) because they had transacted at arm's length as buyer and seller, Gavora had presented "no evidence . . . of a special relationship of trust," and a mere business relationship does not necessarily give rise to a fiduciary duty. Relying on precedent, the court also said that § 551(2)(e) does not apply when parties to a real estate contract are represented "by real estate professionals in an arm's-length commercial transaction [that] . . . contain[s] an as-is clause."[6] The court quoted commentary to § 551(2)(e) stating that there is no duty to disclose "[w]hen the facts are patent, or when the plaintiff has equal opportunity for obtaining information[,] . . . or when the defendant has no reason to think that the plaintiff is acting under a misapprehension."[7] The court found that Gavora "could have easily discovered" the contamination[8] and that the City had no reason to know Gavora did not know about the contamination.

### 3.   Undisclosed dangerous conditions known to seller

The superior court found that "the harm caused to the land occurred while

---

[6]   The superior court quoted *Deptula v. Simpson*, 164 P.3d 640, 646 (Alaska 2007).

[7]    RESTATEMENT (SECOND) OF TORTS § 551 cmt. k (AM. L. INST. 1977).

[8]   The mall property had been added to ADEC's publicly available contaminated properties list in 2000.

Gavora was in possession of the land and well before the land was sold."  The court applied the Restatement (Second) of Torts § 353, in essence providing that a seller who fails to disclose a known condition involving "unreasonable risk" is subject to liability "for physical harm caused by the condition" if:  (a) the buyer "does not know or have reason to know" of the risk but (b) the seller "knows or has reason to know" of the risk and "has reason to believe that the [buyer] will not . . . realize the risk."[9]  The court rejected Gavora's argument that the harm occurred after the purchase.  The court found that Gavora had "not established that it did not have reason to know about the contamination" and reiterated that the City had no reason to know about Gavora's mistake.

### 4.    Good faith and fair dealing

The superior court reasoned that Gavora's good faith and fair dealing claim was "premised on the City's duty to disclose the contamination" because the covenant of good faith "does not 'create a duty where one does not exist.' "[10]  Because the court concluded that the City was under no duty to disclose, the court rejected Gavora's good faith and fair dealing claim.

### 5.    Post-trial motions

Gavora filed a post-trial motion for reconsideration, but the superior court denied reconsideration.  Gavora also sought a restitution remedy, but the court concluded that the motion was not allowed.  Gavora filed a motion for a new trial or amendment of judgment, essentially expanding on the arguments made in its motion for reconsideration; the superior court denied the motion.  Gavora sought reconsideration,

---

[9]     *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 782 (Alaska 1975) (quoting RESTATEMENT (SECOND) OF TORTS § 353 (AM. L. INST. 1965)).

[10]     The superior court quoted *Alaska Fur Gallery, Inc. v. Hwang*, 394 P.3d 511, 516 (Alaska 2017).

but the court again denied reconsideration.

## III.   STANDARD OF REVIEW

"The existence of a duty is a question of law which we review de novo."[11] We review legal questions de novo and factual findings, including whether a witness is credible, for clear error.[12] Clear error is when we are "left with a definite and firm conviction based on the entire record that a mistake has been made."[13] We review denial of a motion for reconsideration for abuse of discretion and will reverse only when "necessary to prevent a miscarriage of justice."[14] When we review denial of a new trial request, "we view the evidence in the light most favorable to the non-moving party, and 'will . . . reverse a decision to deny a new trial [only] if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust.' "[15]

## IV.   DISCUSSION

### A.   Duty To Disclose Contamination

The superior court discussed the five circumstances set out in Restatement (Second) of Torts § 551(2)(a)-(e) creating a duty to disclose and concluded that the City

---

[11]     *Burnett v. Gov't Emps. Ins. Co.*, 389 P.3d 27, 29 (Alaska 2017).

[12]     *Brown v. Knowles*, 307 P.3d 915, 923 (Alaska 2013) (stating applicable standards of review); *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003) (applying clear error review to credibility determination).

[13]     *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004).

[14]     *N. Slope Borough v. Brower*, 215 P.3d 308, 311 (Alaska 2009) (quoting *Alyeska Pipeline Serv. Co. v Anderson*, 629 P.2d 512, 518 (Alaska 1981)).

[15]     *HDI-Gerling Am. Ins. Co. v. Carlile Transp. Sys., Inc.*, 426 P.3d 881, 886 (Alaska 2018) (alterations in original) (quoting *Hunter v. Philip Morris USA, Inc.*, 364 P.3d 439, 447 (Alaska 2015)).

had no duty to disclose. Gavora argues that the court misapplied §§ 551(2)(a) and (e), but Gavora points to no evidence of "loyalty" or "disavowal of self interest" indicative of a fiduciary relationship.[16]

### 1. Restatement (Second) of Torts § 551(2)(a)

Section 551(2)(a) provides:

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a) matters known to him that the other is entitled to know because of a fiduciary or similar relation of trust and confidence between them . . . .

Gavora contends that the parties transformed their business relationship into a "joint venture[]" by coordinating to determine the property's fair market value. A joint venture is "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge."[17] The parties pooled resources for the appraisal, not as a "single business enterprise for profit" but as one step in a transaction between self-interested parties with no shared profits. They disputed how to value the property, negotiated a compromise, and finalized the appraisal instructions, suggesting that neither party disavowed its self-interest or placed "special confidence" in the other creating a relation

---

[16] *Wagner v. Key Bank of Alaska*, 846 P.2d 112, 116 (Alaska 1993) (noting "hallmarks" of fiduciary relationship are "[l]oyalty and the disavowal of self interest"); *see also Paskvan v. Mesich*, 455 P.2d 229, 232 (Alaska 1969) ("[A] confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence.").

[17] *N. Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1187 (Alaska 1977) (quoting *State v. Bland*, 197 S.W.2d 669, 672 (Mo. 1946)).

of trust.[18]

Gavora also contends that the parties formed a relation of trust because "a government entity[, such as the City,] has the highest" duty "when entering contracts with its citizens." But the City's status as a government entity does not by operation of law establish a relation of trust.[19] The City neither entered into a public contract nor exercised a statutory duty; it participated in the market as a commercial real estate vendor. The superior court found that Gavora had cited "no case holding that either the landlord-tenant relationship or the buyer-seller relationship in a commercial real estate sale establishes a . . . relation of trust" and that "Gavora presented no evidence that [the parties] had a close business relationship[] or . . . regularly shared information about [the mall property]." The court noted that "the relationship . . . had always been [at] an arm's length."[20]

Gavora assumed the mall property lease by acquiring the prior leaseholder and then obtaining the City's permission to assign the lease to Gavora; Gavora did not initially negotiate or collaborate with the City. The lease allowed Gavora to independently terminate the relationship, to develop and sublease the property without the City's input, and to monetize the property without sharing profits. Gavora was experienced at negotiating commercial real estate transactions and was represented by

---

[18] *See Paskvan*, 455 P.2d at 232; *see also Munn v. Thornton*, 956 P.2d 1213, 1220 (Alaska 1998) ("Fiduciary relationships are generally defined by a level of trust beyond that in ordinary business relationships.").

[19] *Cf. Laybourn v. City of Wasilla*, 362 P.3d 447, 456 (Alaska 2015) (finding no special relationship between city and citizen in easement agreement context).

[20] An arm's-length transaction "involv[es] dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power; not involving a confidential relationship." *Arm's-length*, BLACK'S LAW DICTIONARY (11th ed. 2019).

counsel. The record thus reflects that Gavora and the City formed a standard business relationship by engaging in an arm's-length commercial real estate transaction between self-interested parties. And "[a] duty to disclose is rarely imposed where the parties deal at arm's length and where the information is the type which the buyer would be expected to discover by ordinary inspection and inquiry."[21]

On these facts, which are not clearly erroneous, the superior court did not err by determining that the City had no disclosure duty under § 551(2)(a).

### 2. Restatement (Second) of Torts § 551(2)(e)

Section 551(2)(e) provides:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> . . . .
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Gavora contends that the superior court "failed to consider Gavora's insistence that the appraisal [for the mall property] address environmental concerns." Gavora wrote to the City about the expected appraisal: "The industry standards for commercial appraisals include[] tax base assessments, comparable sales, existing leaseholds, environmental concerns, etc." Gavora contends that listing environmental concerns conclusively indicated Gavora's lack of knowledge about contamination. But the appraisal noted that appraisers are not experts in detecting environmental

---

[21] *Matthews v. Kincaid*, 746 P.2d 470, 472 (Alaska 1987) (citing RESTATEMENT (SECOND) OF TORTS § 551 (AM. L. INST. 1977)).

contamination and explicitly instructed the parties to hire an environmental expert "if desired." As the superior court reasoned, to the extent Gavora specifically wanted the appraisal to address environmental concerns, relying on an appraisal that explicitly avoided the issue was unreasonable.

Gavora next contends that it behaved reasonably and could not easily have discovered the contamination, noting that: (1) Smith, the City's primary negotiator, did not use the ADEC database; (2) the ADEC database did not become available online until after the sale; (3) Gavora would have requested an environmental assessment had it known about possible contamination; (4) banks usually do not require assessments absent red flags; and (5) the City's environmental engineer "conceded that Gavora's actions were reasonable in the absence of knowledge of the environmental contamination." But neither the Restatement nor case law appears to support Gavora's proposition that there is a duty to disclose under § 551(2)(e) simply because one negotiating party acted reasonably.

Gavora further contends that the City "was aware" the appraisal's assumption "that the property was environmentally clean was a mistaken one." But the relevant question is whether the City knew that *Gavora* (and not the appraiser) was mistaken.[22] The appraiser's lack of knowledge about the contamination is not evidence

---

[22] The Restatement explains:

> When the facts are patent, or when the plaintiff has equal opportunity for obtaining information that he may be expected to utilize if he cares to do so, or when the defendant has no reason to think that the plaintiff is acting under a misapprehension, there is no obligation to give aid to a bargaining antagonist by disclosing what the defendant has himself discovered.

(continued...)

-11- **7575**

Gavora also had no knowledge of the contamination, much less that the City *knew* Gavora had no knowledge of it.[23] The parties asked the appraiser to make various factually inaccurate assumptions when calculating the property's value, such as the assumption that the property was vacant. The City thus did not necessarily have an obligation to correct all of the appraiser's factually inaccurate assumptions.

Gavora contends the purchase agreement's as-is clause "does not absolve the City from liability."[24] But the superior court considered the as-is clause as evidence that the City had no reason to know Gavora mistook the property as uncontaminated; Gavora stated in writing to the City that it had inspected the mall property, was familiar with it, and agreed to purchase it "as is."

The superior court first found that the parties engaged in a commercial real estate transaction involving an as-is clause, militating against finding a duty to disclose. The court then concluded that Gavora had "an equal and readily available opportunity to" discover the contamination by contacting ADEC. The court further reasoned that the City had "[no] reason to know that Gavora mistakenly believed the property was uncontaminated." As noted above, a duty to disclose "is rarely imposed where the parties deal at arm's length and where the information is the type which the buyer would

---

[22]     (...continued)
RESTATEMENT (SECOND) OF TORTS § 551 cmt. k (AM. L. INST.1977).

[23]     *See id.* § 551(2)(e) (noting duty to disclose if one party to transaction knows that other party is mistaken about facts and disclosure would be expected based on parties' relationship).

[24]     Gavora cites our statement that "generally . . . an 'as is' provision in a contract for the sale of realty does not bar a vendee's claim based on allegations of fraud, misrepresentation, or nondisclosure." *Stormont v. Astoria Ltd.*, 889 P.2d 1059, 1062 n.6 (Alaska 1995).

be expected to discover by ordinary inspection and inquiry,"[25] including "matters of public record."[26] And we have suggested that § 551(2)(e) is "inapplicable" if both parties are "represented by real estate professionals in an arm[']s-length commercial transaction" and "the contract . . . contain[s] an as-is clause."[27]

On the findings of fact, which are not clearly erroneous, the superior court did not err by determining that the City owed no disclosure duty under § 551(2)(e).

## B.  Failure To Disclose A Dangerous Condition Known To A Land Seller

Section 353 of the Restatement (Second) of Torts provides:

> (1) A [seller] of land who conceals or fails to disclose to [a buyer] any condition . . . which involves unreasonable risk . . . is subject to liability . . . for physical harm caused by the condition after the [buyer] has taken possession, if
>
> (a) the [buyer] does not know or have reason to know of the condition or the risk involved, and
>
> (b) the [seller] knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the [buyer] will not discover the condition or realize the risk.[28]

Comment d to § 353 further explains that a seller who does not actively deceive a buyer "is entitled to expect" the buyer "will discover a condition which would be disclosed . . . by such an inspection as the [seller] should make before buying the land."

The superior court concluded under § 353 that the City was not liable because:  the City did not actively deceive Gavora; Gavora had reason to know of the

---

[25]  *Matthews*, 746 P.2d at 472.

[26]  *Laybourn v. City of Wasilla*, 362 P.3d 447, 456 (Alaska 2015).

[27]  *Deptula v. Simpson*, 164 P.3d 640, 646 (Alaska 2007).

[28]  RESTATEMENT (SECOND) OF TORTS § 353 (AM. L. INST. 1965).

contamination; and all physical harm occurred before the sale. Gavora challenges all three findings.

### 1. No active deception

Smith testified in federal district court that he did not know the mall property likely caused the apartment complex contamination. The federal court found his testimony "not credible, given . . . Smith's long career with the City," concluding that "in 1999[] Smith knew, or . . . should have known, that it was likely there was PCE and TCE contamination at [the mall property]."[29] The superior court was bound by this finding.

Smith then testified in superior court that, during expedited negotiations with Gavora in 2002, he "made no connection" between the apartment complex contamination, the mall property contamination, and the sale. The superior court specifically found this testimony "credibl[e]," reasoning that perhaps Smith did not "connect the dots" because he negotiated the sale more than a year after learning about the contamination, the deal was rushed, and Gavora had threatened to sue the City if the sale was not completed on Gavora's time line.

Gavora first contends that the superior court's finding has no evidentiary basis because "Smith never claimed" that he "failed to make the connection" about contamination. But when asked, Smith testified: "I didn't make any connection at the time." This does not contradict the federal court's factual findings, which were only that Smith knew or should have known about the contamination by 1999.

Gavora also contends that the findings about Smith being credible and the City not actively deceiving Gavora are clearly erroneous and that the binding federal

---

[29]  *See Federal Findings*, No. 4:15-cv-00015-SLG, 2017 WL 3161626, at *3 (D. Alaska July 7, 2017).

court findings resolve this issue in Gavora's favor. But the federal court did not find that Smith, or any other City employee, consciously deceived Gavora.[30] Rather, the federal court disbelieved some of Smith's testimony — primarily his assertion that he did not know the direction of groundwater flow — and concluded that in 1999 he knew or should have known that the mall property was contaminated.[31] This is distinctly different from the superior court's finding that in negotiations occurring years later Smith did not actively deceive Gavora.

Gavora points to evidence suggesting that in 2001 Smith indicated that the City might conceal or choose not to disclose its knowledge. But Gavora points to no evidence directly suggesting that in 2002 any City employee intended to deceive Gavora. And Rudolf Gavora, Gavora's agent, testified that no City employee affirmatively represented the property was uncontaminated.

The federal court's credibility determination thus bound the superior court only with respect to the testimony that the federal court found not credible: that Smith did not understand groundwater flow in Fairbanks.[32] The superior court was entitled to make its own credibility determination of Smith's later testimony about whether he actively deceived Gavora because trial courts are best suited to weigh evidence and determine the credibility of witnesses who provide oral testimony.[33] Fact finders

---

[30]    *See id.* at *1-5.

[31]    *Id.* at *3.

[32]    *See id.* at *3.

[33]    *Luker v. Sykes*, 357 P.3d 1191, 1199-2000 (Alaska 2015) ("[I]t is the function of the superior court, not of this court, to judge witness credibility . . . . [I]f most of the evidence is oral testimony . . . then the superior court's greater ability to assess witness credibility requires deferential review . . . ." (first alteration in original) (quoting
(continued...)

generally may discount all or part of a witness's testimony.[34] We "ordinarily will not overturn a trial court's finding based on conflicting evidence" or "re-weigh evidence when the record provides clear support for the trial court's ruling."[35] And "we will generally accept the determination[s] of witnesses' credibility that are made by the [superior] court . . . [because] the court heard and observed the witnesses first hand."[36]

The superior court's finding that Smith and the City did not actively deceive Gavora is not clearly erroneous.

## 2. Reason to know about the contamination

Because the superior court found that the City did not consciously deceive Gavora, the superior court also considered the Restatement (Second) of Torts:

> A [seller], innocent of conscious deception, is entitled to expect . . . that [a buyer] will discover a condition which would be disclosed by such an inspection as the [buyer] should make before buying the land and taking possession of it or before throwing it open to the entry of others.[37]

---

[33] (...continued)
*Fyffe v. Wright*, 93 P.3d 444, 450-51 (Alaska 2004))).

[34] *See, e.g.*, *Vezey v. Green*, 171 P.3d 1125, 1132 (Alaska 2007) (upholding trial court's decision despite inconsistency in witnesses' testimony because it "involve[d] the credibility of witnesses and interpretations of their testimony"); *Wasserman v. Bartholomew*, 38 P.3d 1162, 1167 (Alaska 2002) (upholding trial court's decision despite witness's partially inconsistent testimony because "the trial court did not adopt these portions of [the witness's] testimony" and "this court consistently grants deference to trial courts where credibility is at issue").

[35] *Dara v. Gish*, 404 P.3d 154, 159 (Alaska 2017) (quoting *In re Adoption of S.K.L.H.*, 204 P.3d 320, 325 (Alaska 2009)).

[36] *Demoski v. New*, 737 P.2d 780, 784 (Alaska 1987).

[37] RESTATEMENT (SECOND) OF TORTS § 353 cmt. d (AM. L. INST.1965).

The superior court found that Gavora easily could have discovered and therefore had reason to know about the contamination. The court relied on evidence in the record that: Gavora "was aware generally of environmental concerns in commercial land sale transactions"; Gavora knew of the dry-cleaning operations; and Gavora took "no action to investigate."

Gavora challenges the finding that it had reason to know about the contamination. But the record reflects that Gavora was a sophisticated real estate buyer, experienced in commercial real estate transactions, aware of environmental issues commonly affecting commercial properties, represented by counsel, and experienced at dealing with ADEC. The mall property's contamination status was easily discoverable by ordinary inquiry; Gavora did not need to independently discover the contamination because the property was added to ADEC's publicly available list of contaminated sites in 2000, well before the sale negotiations. And nothing prohibited Gavora from inquiring about the mall property during its then-existing dealings with ADEC about Gavora's other contaminated properties in Fairbanks.

Gavora also argues that it "reasonably believed it knew everything there was to know about the property." But Gavora did no environmental testing, made no inquiries into the mall property's contamination status, and, *after* requesting an appraisal addressing "environmental concerns," relied on an appraisal that explicitly did not address environmental contamination. Gavora stated in the purchase agreement that prior to the purchase it had done "due diligence" and that it had "inspected the property," was "familiar with its condition," and was agreeing to purchase the property "as is." But Gavora apparently chose to not conduct any inspection or inquiry into

environmental concerns.[38]  The purchase agreement language supports the conclusion that the City did not "ha[ve] reason to believe that" Gavora had not discovered the contamination, as would be necessary to impose liability under Restatement (Second) of Torts § 353.

The record supports the superior court's finding that Gavora had reason to know about the contamination; it is not clearly erroneous.

### 3.    Physical harm

Gavora contends the superior court's finding that there was no physical harm after Gavora purchased the mall property was clearly erroneous.  Gavora argues that trial testimony established the groundwater contamination plume's continued expansion and that the court "disregarded the human health hazard and property damage from contaminant vapors" arising after Gavora purchased the mall property.  But Gavora provides no legal authority supporting its argument, citing only trial testimony about ongoing damage and remediation efforts related to the contamination.

In ruling against Gavora on this argument, the superior court cited credible trial evidence that the groundwater contamination plume may have continued to expand as it migrated off the mall property but that there was insufficient evidence showing contamination at the site grew any worse after 1999.  The court was bound by the federal district court's findings that 80% to 90% of the contamination was caused by Gavora's dry-cleaning tenants from 1976 to 2001 and that no dry-cleaning establishment operated after Gavora purchased the property in 2002.  The superior court thus determined that "all of the physical harm to the land occurred *before* Gavora took possession of the property" (emphasis in original) and that under Restatement (Second)

---

[38]    *See Laybourn v. City of Wasilla*, 362 P.3d 447, 456 (Alaska 2015) (noting that buyers should discover information available by "ordinary inspection and inquiry" (quoting *Matthews v. Kincaid*, 746 P.2d 470, 472 (Alaska 1987))).

of Torts § 353(1) the City would be "liable to Gavora only 'for physical harm caused by the [contamination] *after* [Gavora] ha[d] taken possession' " (emphasis and alterations in original).

The record supports the superior court's finding that the physical harm occurred prior to Gavora purchasing the mall property; it is not clearly erroneous.

## C.   Implied Covenant Of Good Faith And Fair Dealing

Gavora contends that:  (1) the City had and violated a disclosure duty under tort law; (2) Gavora did not waive its contract law argument and the City had and violated a disclosure duty under contract law; and (3) the City had and violated an independent disclosure duty arising solely under the covenant of good faith and fair dealing.

We have explained that:

A "covenant of good faith and fair dealing is implied in all contracts in Alaska," and it "prevents each party from doing anything that will injure the right of the other to receive the benefits of the agreement."  But the covenant's purpose "is to effectuate the reasonable expectations of the parties, not to alter or add terms to the contract," and it "*will not create a duty where one does not exist.*"[39]

The superior court concluded that to establish a breach of the implied covenant of good faith and fair dealing, Gavora first needed to prove the City had an independent disclosure duty under tort or contract law.  The court looked for a duty solely under tort law and, as explained above, found none.  Gavora then argued in a

---

³⁹    *Alaska Fur Gallery, Inc. v. Hwang*, 394 P.3d 511, 516 (Alaska 2017) (emphasis added) (footnotes omitted) (first quoting *Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 267-68 (Alaska 2009); then quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003); and then quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 385 (Alaska 2004)).

post-trial reconsideration motion that the court had failed to address whether the City had a disclosure duty under contract law. The court concluded that Gavora had waived its contract law argument by raising it for the first time on reconsideration.

### 1. Tort law arguments

Gavora argues that the City had a duty to disclose under Restatement (Second) of Torts §§ 551(2)(a) and (e) that forms the basis for its breach of the implied covenant claim. Our earlier discussion affirming the superior court's conclusion that the City did not have a disclosure duty under tort law forecloses this argument.

### 2. Contract law argument

Gavora contends on appeal that its Restatement (Second) of Contracts § 161(b) argument is not waived because Gavora "specifically plead[ed] breach of contract . . . and specifically requested all damages and remedies available." Gavora mischaracterizes its argument as merely seeking the proper remedy and not raising a new theory of liability, asserting that "even if tort liability is not imposed . . . contractual liability based upon nondisclosure may exist under the Restatement (Second) of Contracts." Gavora argued in its motion for reconsideration that the City had and violated a disclosure duty under §161.[40] The superior court determined that at trial Gavora had not mentioned claims under the Restatement (Second) of Contracts and therefore concluded that Gavora had waived those arguments.

An issue raised for the first time in a motion for reconsideration is waived.[41] But an argument is preserved for appeal if it was "closely related to the trial

---

[40] *See Seybert v. Cominco Alaska Expl.*, 182 P.3d 1079, 1096 n.64 (Alaska 2008) (following Restatement (Second) of Contracts to address contract law disclosure duty).

[41] *See Blackburn v. State, Dep't of Transp. & Pub. Facilities*, 103 P.3d 900,
(continued...)

court arguments and could have been gleaned from the pleadings."[42]

The superior court found only a cursory mention of § 161(b) in Gavora's complaint. Gavora's initial summary judgment motion characterized this as a "tort suit." In opposition to a request by the City to stay trial, Gavora stated that it had filed a "common-law misrepresentation" claim against the City and was seeking damages for "tortious actions surrounding the sale of the property." Gavora repeatedly cited the Restatement (Second) of Torts to support its misrepresentation claims without making any argument involving contract law. Gavora's initial pretrial memorandum focused exclusively on tort law; it supplemented that memorandum with a new theory of liability under the Restatement (Second) of Torts but again did not mention contract claims. And during closing arguments, despite mentioning the Restatement (Second) of Torts several times, Gavora never mentioned the Restatement (Second) of Contracts. The City during closing argument identified contract law claims Gavora initially had pleaded but had not pursued at trial. Gavora did not discuss the unpursued claims on rebuttal. Gavora's motion for a new trial states in a heading that "NEITHER PARTY ARGUED §161, BUT THE COURT SHOULD HAVE APPLIED [IT]" (capitalization in original). Gavora therefore did not raise this theory of liability before its motion for

---

[41]    (...continued)
906 (Alaska 2004) ("[T]he court was under no obligation to consider an issue raised for the first time in a motion for reconsideration." (quoting *J.L.P. v. V.L.A.*, 30 P.3d 590, 597 n.28 (Alaska 2001))).

[42]    *Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 788 (Alaska 2002). We have found arguments preserved when a party argued an issue's elements without identifying the issue by name, *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 985 (Alaska 2009); when the argument was "not inherently inconsistent" with and was "grounded in the basic elements of" an argument originally made, *Coster v. Piekarski*, 3 P.3d 333, 336 (Alaska 2000); and when an argument was identical to a theory argued at trial, *Reid v. Williams*, 964 P.2d 453, 456 (Alaska 1998).

reconsideration.

Under § 161(b) a contracting party must disclose information if the party "knows that disclosure . . . would correct a mistake of the other party as to a basic assumption" under which the other party is acting. Gavora's claim thus requires a factual finding that the City knew Gavora was mistaken. But, in connection with Gavora's tort claims, the superior court explicitly found that the City had no reason to know Gavora was operating under a mistake; this would foreclose any contract claim under § 161(b). To the extent Gavora's contract law claim is based on facts not considered for its tort claims, the contract claim was waived.

### 3. Implied covenant of good faith argument

Gavora contends that a "seller's duty to disclose latent conditions of land is defined by the terms and scope of the covenant of good faith and fair dealing," suggesting that the covenant itself gives rise to a disclosure duty. But we have not recognized a free-floating disclosure duty arising solely under the implied covenant; we instead have applied tort and contract law to misrepresentation by omission claims,[43] once stating that a property transaction involving an alleged misrepresentation by omission claim was "best analyzed" as "involving a failure to disclose information when there is an affirmative duty to do so" under tort law.[44] Nothing peculiar or unjust requires analyzing this case under anything other than established tort and contract law

---

[43] *See, e.g.*, *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1202 (Alaska 1998) (discussing tort of misrepresentation by omission); *Bering Straits Native Corp. v. Birklid*, 739 P.2d 767, 768-69 (Alaska 1987) (contemplating contract avoidance on grounds of misrepresentation by omission); *Turnbull v. LaRose*, 702 P.2d 1331, 1334 (Alaska 1985) (discussing tort of misrepresentation by omission); *Johnson v. Curran*, 633 P.2d 994, 998 n.8 (Alaska 1981) (discussing contract law and misrepresentation by omission).

[44] *Turnbull*, 702 P.2d at 1334.

doctrines, and we decline to contradict precedent suggesting that the implied covenant does not give rise to an independent disclosure duty.[45]

### D. Gavora's Post-Trial Motions

Gavora filed motions seeking reconsideration, restitution,[46] and a new trial, which the superior court denied on various grounds, including that (1) Gavora had raised new claims in its motion for reconsideration and (2) Gavora's substantive arguments were unpersuasive. In light of the preceding discussions, the superior court's decisions were not an abuse of discretion.

## V. CONCLUSION

The superior court's decision is AFFIRMED.

---

[45] *See, e.g.*, *Alaska Fur Gallery, Inc. v. Hwang*, 394 P.3d 511, 516 (Alaska 2017).

[46] Gavora filed an additional "Motion for Restitution Remedy" with its motion for reconsideration. The superior court denied the restitution motion as procedurally unallowed. This was not an abuse of discretion because Alaska Civil Rule 77(k) limits the length of motions for reconsideration and does not allow for supplemental companion motions. Gavora concedes that it was able to address the restitution issue elsewhere.