NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| LAWRENCE R., | ) | |
| | ) | Supreme Court No. S-19103 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-17-00882 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| ANDREA P., | ) | <u>AND JUDGMENT</u>* |
| | ) | |
| Appellee. | ) | No. 2111 – October 8, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Marianna C. Carpeneti, Judge.

Appearances: L.R., pro se, Juneau, Appellant. Nathaniel S. Currall, Chupka Currall LLC, Ketchikan, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I. INTRODUCTION

The superior court awarded a mother sole legal custody of her child over the father's objections. In the same order, the court declined a request by the father for relief from his child support obligation, and the court also denied his motion for reimbursement for out-of-network health expenses. A short time later, the father moved for interim custody and support, seeking to relitigate the same child custody and support

---

\*       Entered under Alaska Appellate Rule 214.

issues. The superior court, finding that the motion for interim custody was made in bad faith, denied his motion and imposed sanctions and attorney's fees against the father.

The father appeals, arguing that the superior court made both factual and legal errors. Because we observe no factual errors or abuse of discretion in the court's decisions related to child custody and support, we affirm those rulings. But we vacate the court's award of sanctions and attorney's fees because the court failed to provide the father a hearing before imposing sanctions and failed to make an explicit finding regarding the parents' relative financial resources before awarding attorney's fees.

## II. FACTS AND PROCEEDINGS

Andrea P. filed a complaint for divorce from Lawrence R. in September 2017.[1] They share a 14-year-old child, Bailey R. The parents entered into — and the court approved — a child custody and property settlement agreement in March 2018. Under the terms of the initial agreement, the parents shared joint legal custody and Andrea, the mother, had primary physical custody. Lawrence, the father, received visitation with the child during summers, school breaks of more than a week, and alternating holidays.

The custody agreement was subsequently modified twice. The first modification was approved by the court in November 2018. Legal and physical custody remained unchanged, but the father received increased visitation during the school year, including Wednesday afternoons and alternating weekends. Additionally, the parents stipulated that the mother would provide health insurance for the child, and the parents would equally split uncovered medical costs. Conflict between the parents appears to have intensified in 2021, and in August of that year the father requested a one-year protective order against the mother, which the court denied and later characterized as a "clear custody grab."

---

[1] We use pseudonyms to protect the family's privacy.

After deviating significantly from the existing custody agreement for several years regarding the time the child actually spent with each parent, the parents agreed to a second, minimal modification in March 2023 that generally reaffirmed the visitation terms set by the court in November 2018, again without changing legal and physical custody. The mother also agreed to encourage the child to attend visitation with the father even though, at the time, the child did not want to do so.

The superior court entered interim and final child support orders accepting the parents' stipulations a few weeks later. The support orders were calculated based on the mother's primary physical custody of the child. The interim support order obligated the father to pay child support to the mother from October 1, 2018, to August 31, 2021, but reduced the amount for months where the father had extended visitation. The final child support order applied from September 1, 2021, going forward. It provided that the parents would each pay half of the child's "reasonable health care expenses not covered by insurance."

In May 2023 the father moved for sole legal custody and modification of child support. He argued that awarding him sole legal custody was in the child's best interests because the mother had a history of domestic violence, she refused to facilitate a healthy father-child relationship, and she did not bring the child to her mental health counseling appointments.

The mother opposed the father's motions and filed her own motion for sole legal custody. The mother argued that the father committed custodial interference when he unilaterally took physical custody of the child in violation of the parents' agreement. She contended that in mid-2023, psychiatric care professionals supported residential treatment to address the child's worsening reckless behaviors, but the father ultimately refused to give consent for such treatment. Further, the mother asserted that without informing her, the father changed the child's mental health provider after her previous psychiatrist left to start her own practice. The psychiatrist's services at this new practice were not covered by the child's insurance. The mother argued that the

father's disregard of the custody agreement and his refusal to allow the child to enroll in a residential treatment program constituted a significant change in circumstances and that she should be awarded sole legal custody.

The father filed additional motions in September 2023, including an Alaska Civil Rule 60(b) motion seeking relief from the child support orders entered in March. He also filed a motion to "correct" the child support orders to reflect his belief that the parents had shared physical custody and a request for the mother to pay a share of the costs for the child's out-of-network psychiatric treatment. The mother opposed all of the father's motions.

The superior court held evidentiary hearings in September and October 2023, with a focus on resolving the dispute over legal custody. The court heard testimony from several individuals, including a police officer, the child's psychiatrist, the father, and the mother.

The superior court issued an omnibus order in April 2024 resolving all the outstanding motions. First, the court granted the mother's request for sole legal custody. The court found that the parents' inability to communicate rendered joint legal custody unworkable, as evidenced by the father's filing of "multiple, meritless" domestic violence protective orders against the mother, the parents' inability to comply with the custody order, and credible evidence that the father gave consent for the child to participate in residential mental health treatment and then revoked it as retaliation against the mother. Although it had "serious concerns with both parents' decisions and interactions with each other," the court found that sole legal custody with the mother was in the child's best interests.

Second, the court found that the father was not entitled to relief from the 2023 child support orders. It observed that the mother had primary physical custody and rejected the father's assertion that he had more than 60% of the overnights with the child. The court noted its finding in March 2023 that the father's testimony about the child's time with him was not credible, while the mother's testimony was credible. The

court also reaffirmed its March 2023 findings related to child support and concluded that the father did not meet the requirements for relief from the judgment under Rule 60(b).

Third, the court denied the father's motion to require the mother to pay half of the out-of-network healthcare costs for the child's psychiatric treatment. It found that the expenses were not reasonable because, during the time the costs were incurred, the father had taken physical custody of the child in violation of the court's order, had not informed the mother that he was taking the child to an out-of-network provider, and had not advised the mother of the costs in advance.

Eighteen days after the court issued its order, the father filed a motion for interim custody and support, which the mother opposed. The superior court denied the father's motion, explaining that it could not issue an interim custody order without a motion for custody modification. Prior to the court issuing its order, the mother separately requested Civil Rule 11 sanctions[2] and attorney's fees against the father, along with enforcement of the April omnibus order. She argued that the father's motion for interim custody was clearly without merit and had been made solely for improper purposes. The father opposed and filed his own cross-motions to enforce the omnibus order and for Rule 11 sanctions and attorney's fees against the mother.

The superior court granted the mother's motions and denied the father's. It found that the father had acted in bad faith and engaged in vexatious conduct because he filed the motion for interim custody so soon after the court's omnibus order. The court characterized the father's actions as an attempt "to get around the custody order," as he had done before on multiple occasions in the proceedings. The court imposed a

---

**2** *See* Alaska R. Civ. P. 11 (authorizing court to impose sanctions on party or attorney for filing made for improper purpose or containing frivolous claims, unwarranted legal contentions, or unsupported factual contentions).

Rule 11 sanction of $1,000 and required the father to pay 100% of the attorney's fees the mother had incurred by litigating the cross-motions on enforcement and sanctions.

The father appeals.

## III. STANDARD OF REVIEW

"The trial court has broad discretion in child custody decisions."[3] We will "set aside a trial court's determination of custody 'only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.' "[4] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[5] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[6] We defer to a "superior court's credibility determinations, particularly when they are based on oral testimony."[7]

We will " 'reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard,' or if 'its factual findings are clearly erroneous.' "[8] "[W]hether the superior court 'applied the correct legal standard to its

---

[3]     *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005).

[4]     *Id.* (quoting *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 534 (Alaska 2004)).

[5]     *Matthew P. v. Gail S.*, 354 P.3d 1044, 1047 (Alaska 2015) (quoting *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014)).

[6]     *Id.*

[7]     *Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 930 (Alaska 2012).

[8]     *Wills v. Humphries*, 564 P.3d 272, 275 (Alaska 2025) (quoting *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016)).

child support determination is a question of law that we review de novo.' "[9] "Similarly, 'the interpretation of Alaska Civil Rules governing child support orders is reviewed de novo; we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[10]

"The standard for review of an order denying a Rule 60(b) motion is whether the superior court abused its discretion."[11] We review "for abuse of discretion a trial court's decision to impose Rule 11 sanctions."[12]

## IV. DISCUSSION

We first address the father's arguments concerning the superior court's award of sole legal custody to the mother. Next, we review the father's challenge to the court's denial of his Rule 60(b) motion for relief from the child support orders. Third, we address the father's claim that the court erred by not ordering the mother to reimburse him for out-of-network medical expenses. We affirm the superior court's order with respect to these matters for the reasons outlined below. Additionally, we hold that the father waived his judicial bias argument. Lastly, we hold that the superior court's attorney's fees award and Rule 11 sanctions order were erroneous, and we remand for further proceedings.

### A. We Affirm The Superior Court's Award Of Sole Legal Custody To The Mother.

The father challenges the superior court's factual findings underlying its best interests analysis. He also argues that the court abused its discretion by awarding the mother sole legal custody. For the reasons detailed below, we hold that the superior

---

[9] *Id.* (quoting *Mitchell*, 370 P.3d at 1076).

[10] *Id.* (quoting *Mitchell*, 370 P.3d at 1076).

[11] *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 884 (Alaska 2013) (quoting *Grothe v. Olafson*, 659 P.2d 602, 611 (Alaska 1983)).

[12] *Alaska Bldg., Inc. v. Legis. Affs. Agency*, 403 P.3d 1132, 1135 (Alaska 2017).

court did not clearly err in its factual findings and did not abuse its discretion by awarding the mother sole legal custody.[13]

### 1. The superior court did not clearly err in its best interests findings.

"A court 'may modify a custody award if it determines that (1) a change in circumstances requires the modification of the award and (2) the modification is in the best interests of the child.' "[14] "A 'continued lack of cooperation' between parents may be a change in circumstances sufficient to justify a modification of custody under AS 25.20.110."[15] If the court finds that the parents' inability to communicate renders joint legal custody unworkable, it must award sole legal custody to one parent or the other.[16] In determining which parent to award sole legal custody, the court must consider the statutory best interests factors.[17]

---

[13] The father did not seek modification of physical custody in the superior court, and the superior court did not make a ruling in that regard. It is unclear whether the father alleges on appeal that the superior court erred by declining to modify physical custody in his favor. To the extent he now argues that physical custody should have been modified, we reject his argument as having been waived. *See Jouppi v. State*, 566 P.3d 943, 959 (Alaska 2025) (holding that arguments raised for the first time on appeal are considered waived).

[14] *Wells v. Barile*, 358 P.3d 583, 588 (Alaska 2015) (quoting *Graham R. v. Jane S.*, 334 P.3d 688, 694 (Alaska 2014)); AS 25.20.110(a).

[15] *Riggs v. Coonradt*, 335 P.3d 1103, 1107 (Alaska 2014) (quoting *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993)) (holding that "complete breakdown in communication" was sufficient to find substantial change in circumstances).

[16] *Id.*

[17] The nine best interests factors are (1) "the physical, emotional, mental, religious, and social needs of the child;" (2) "the capability and desire of each parent to meet these needs;" (3) "the child's preference if the child is of sufficient age and capacity to form a preference;" (4) "the love and affection existing between the child and each parent;" (5) "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;" (6) "the willingness and

In this case, the superior court found that the parents' inability to communicate rendered joint legal custody unworkable. It then considered the best interests factors, finding that three factors favored the mother: the physical, emotional, mental, religious, and social needs of the child; the capability and desire of each parent to meet these needs; and the willingness and ability of each parent to encourage a relationship between the other parent and the child.[18] The court also found that the remaining factors were either neutral or inapplicable.

On appeal, the father first argues that the superior court erred by finding that the mother demonstrated a greater willingness and ability to facilitate the child's relationship with both parents; his argument is largely based on an allegation that the mother wrongfully withheld custody of the child from him for 180 days. Second, he suggests that the court erred by finding that the mother had a greater ability and desire to meet the child's needs. Lastly, he argues that the court erred by not finding that the mother committed domestic violence against the child. None of his arguments are persuasive.

As to the father's first argument, the superior court did not clearly err in finding that the mother did more than the father to encourage a close and continuing relationship between the child and both parents. The father cites no evidence other than his own testimony — which the court found not to be credible[19] — to support his claim

---

ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child[;]" (7) "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;" (8) "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;" and (9) "other factors that the court considers pertinent." AS 25.24.150(c).

[18]     *See* AS 25.24.150(c)(1), (2), (6).

[19]     "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court,

that the mother wrongfully withheld visitation for 180 days.  Rather, the evidence in the record supports the court's finding that the mother encouraged the child to visit the father, and any failure to attend visitation was due to the child's desire not to attend the visits.  The court found that the mother credibly testified that she encouraged visitation between the child and father.  Even when the child did not want to see the father, the mother would drive her to the parents' agreed-upon meeting location and give her the option of leaving with the father.  If the child still chose not to attend the visitation, the mother would discipline her by taking one of her electronics away.  Indeed, both parents acknowledged that the child did not want to visit the father at times.  The father also argues that the mother wrongfully told the school that the child did not want to take the bus to his house.  But the superior court could fairly interpret the mother's action as an attempt to satisfy the child's preferences pertaining to the mode of transportation, and not as an attempt to interfere with the child's relationship with the father.

The court's finding that the mother was more willing to facilitate a close and continuing relationship than the father was also bolstered by the father's own testimony.  In contrast to the mother's testimony, the father's testimony demonstrated that he improperly frustrated the mother's visitation with the child when she was in his physical custody.  He testified that he unilaterally withheld the mother's custody time with the child based on a concern regarding the child's medication use — use that he had been informed of and had consented to months earlier.

---

performs the function of judging the credibility of witnesses and weighing conflicting evidence." *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).  The father briefly argues that the superior court erred in its credibility determinations.  Given that the superior court heard oral testimony from both the mother and father, it was "best suited" to determine their credibility.  *Gavora, Inc. v. City of Fairbanks*, 502 P.3d 410, 418 (Alaska 2021).  The father provides no persuasive evidence to demonstrate that the court's credibility determinations were clearly erroneous.

The father's second argument also fails. He alleges that the mother refused to seek appropriate medical and mental health treatment for the child. He argues that the psychiatrist's testimony demonstrated that the mother's conduct led to "concerning gaps" in the child's psychiatric care. According to the father, the mother also caused a detrimental impact to the child's educational development because "[the child] has accumulated over 200 absences and has received failing grades" while under the mother's care, but consistently attended school while in his care.

However, the mother's testimony supports the court's conclusion that she made reasonable attempts to get the child treatment for her physical and mental health needs. The court found credible the mother's testimony that she attempted to get the child evaluated — a necessary precursor before she could seek residential treatment — but the father refused to attend. Eventually, the mother was able to have a meeting with evaluators, without the father's participation, and received a referral for treatment. The mother coordinated with the residential facility and her insurance provider, but the father refused to consent to the child's treatment. The mother testified that the father had initially agreed to allow the child to attend residential treatment, but later revoked his consent as retaliation for an unrelated decision the mother made regarding the child's travel.

The father argues that the psychiatrist's testimony undermines the superior court's conclusion that the mother desired to meet the child's needs. The psychiatrist testified that the mother cancelled some of the child's appointments without an excuse and that the child's school performance improved while she resided with the father. But the court found that the psychiatrist's testimony on these points was not credible because the testimony was largely based on information provided solely by the father, and thus the psychiatrist was biased in favor of the father. The father fails to identify any other evidence supporting his claim. Therefore, the court did not clearly err by finding that the mother had a greater ability and willingness to meet the child's needs.

Lastly, the superior court did not clearly err by declining to find evidence of domestic violence. The father attempts to reargue the merits of his claims that the mother had abused the child — claims which were rejected by the court in several domestic violence protective order proceedings. The court found that the father's requests for protective orders were without merit and constituted a clearly improper attempt to take custody of the child. The father provided no new evidence to support the allegations that had already been rejected. Thus, the court did not clearly err by declining the father's invitation to reweigh the evidence.

### 2. The superior court did not abuse its discretion by granting the mother sole legal custody.

The father next contends that the superior court abused its discretion by awarding the mother sole legal custody and, instead, it should have awarded him sole legal custody. In support, he argues that the court failed to consider that the mother wrongfully withheld his visitation with the child, caused a decline in her academic performance, and left concerning gaps in her medical care.

The superior court did not abuse its discretion by awarding sole legal custody to the mother.[20] Once the court found that the parents' inability to communicate made joint legal custody unworkable, it was required to award sole legal custody to one parent or the other.[21] Faced with the unworkability of joint legal custody, the court appropriately weighed the relevant best interests factors, with three weighing in the mother's favor and the remainder neutral or inapplicable. The court's determination of legal custody was also supported by credibility determinations within its discretion, and

---

[20] *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014) (explaining that superior courts abuse discretion by "consider[ing] improper factors in making [a] custody determination, fail[ing] to consider statutorily mandated factors, or assign[ing] disproportionate weight to particular factors while ignoring others").

[21] *Riggs v. Coonradt*, 335 P.3d 1103, 1107 (Alaska 2014).

it entered factual findings supported by testimony. Thus, there was no abuse of discretion.

> **B.**    **The Superior Court Did Not Abuse Its Discretion By Denying The Father's Rule 60(b) Motion For Relief From Child Support Orders.**

A party may move for relief from a final judgment under Rule 60(b) due to "mistake, inadvertence, surprise or excusable neglect" or for "any other reason justifying relief from the operation of the judgment."[22] "The purpose of Civ. R. 60(b) is to provide relief from judgments which, for one reason or another, are unjust."[23] "[T]he burden of establishing a basis for relief falls on the party seeking it."[24]

The father argues that the superior court abused its discretion by denying his Rule 60(b) motion for relief from the interim and final child support orders entered in March 2023. He argues that he is entitled to relief from these orders because the superior court committed a mistake[25] when it ordered support based on the determination that the mother had primary physical custody rather than shared physical custody. He makes two arguments to support his contention that the parents have shared physical custody: (1) his accounting of the actual time that he had physical custody of the child demonstrates that physical custody was shared and (2) his interpretation that the custody agreement established shared physical custody. Neither is persuasive.

---

[22]    Alaska R. Civ. P. 60(b)(1), (6).

[23]    *Wellmix, Inc. v. City of Anchorage*, 471 P.2d 408, 411 & n.13 (Alaska 1970) ("[A]n appeal from a denial of a Rule 60(b) motion does not bring up the final judgment for review.").

[24]    *Buchholdt v. Nelson*, 534 P.3d 91, 93 (Alaska 2023) (alteration in original).

[25]    We assume, without deciding, that a court's mistake can serve as a basis for relief under Rule 60(b). *See Red Hook Constr., LLC v. Bishop*, 556 P.3d 1188, 1192-93 (Alaska 2024); *BBFM Eng'rs, Inc. v. McDonald*, 530 P.3d 352, 356 (Alaska 2023).

The father's first argument is easily rejected. Under Civil Rule 90.3, a parent has "shared physical custody" if the child resides with the parent "for a period *specified in writing* in the custody order of at least 30, but no more than 70, percent of the year."[26] "The visitation schedule must be specified in the *decree* or in the *agreement* of the parties which has been ratified by the court."[27] "In order for a day of visitation to count towards the required thirty percent, the children normally must remain overnight with that parent."[28] The father's unsupported contention that he actually had physical custody of the child for more than 30% of overnight visits from 2018 to 2021 does not establish that he had shared physical custody. Rather, it is the court's custody decree and the agreement ratified by the court that establishes whether there is "shared physical custody" for purposes of calculating child support.[29]

Further, even under his second argument, the father did not meet his burden to demonstrate that the parents' custody agreement gave him shared physical custody of the child. Each of the agreements ratified by the superior court stated that the mother had primary physical custody. The March 2023 child custody modification did not specifically mention physical custody, but the court noted that the terms of the father's visitation were "largely reflective" of the November 2018 agreement. The father argues — without any supporting evidence — that the agreement gave him 45% of overnight visits during each calendar year.[30] However, given the absence of support

---

[26]    Alaska R. Civ. P. 90.3(f)(1) (emphasis added).

[27]    Alaska R. Civ. P. 90.3 cmt. IV.A (emphasis added).

[28]    Alaska R. Civ. P. 90.3 cmt. V.A.

[29]    *Id.*

[30]    *See* Alaska R. Civ. P. 90.3(f)(1) (requiring child to reside with parent for at least 30 percent of overnight visits in calendar year to establish shared physical custody).

in the record, the father's conclusory calculation is insufficient to establish that the superior court committed a legal error by denying his motion.[31]

## C. The Superior Court Did Not Abuse Its Discretion By Declining To Award The Father Half Of The Out-Of-Network Medical Expenses.

The father argues that the superior court erred by not ordering the mother to reimburse him for 50% of the costs that he incurred for the child's out-of-network mental health treatment. The custody agreement required the parents to "equally split all uncovered medical costs" for the child, and the child support order required the parents to equally split "reasonable health care expenses not covered by insurance." The superior court rejected the father's motion because the father "had physical custody of [the child] in violation of the court's custody order. He did not inform his co-parent he was taking [the child] to an out-of-network provider, nor did he advise of the costs."

The superior court did not abuse its discretion[32] by denying the father's motion. Civil Rule 90.3 provides that "[t]he court shall allocate equally between the parties the cost of reasonable health care expenses not covered by insurance unless the court orders otherwise for good cause."[33] Not only did the father fail to advise or obtain consent from the mother before engaging the child in out-of-network treatment, he ignored the March 2023 portion of the agreement specifically mandating that the child was to continue treatment with her current provider. Under these circumstances, it was not an abuse of discretion for the superior court to conclude that the uninsured medical

---

[31] *See Buchholdt v. Nelson*, 534 P.3d 91, 93-94 (Alaska 2023) (holding that "unsupported, unsworn assertion" made for first time on appeal was insufficient for movant to demonstrate that superior court committed legal error by denying Rule 60(b) motion).

[32] *See J.L.P. v. V.L.A.*, 30 P.3d 590, 599 (Alaska 2001) (applying abuse of discretion standard to review of court's order requiring parent to pay half of uncovered medical expenses).

[33] Alaska R. Civ. P. 90.3(d)(2).

expenses incurred by the father were unreasonable. The superior court acted within its discretion to deny the father's request for reimbursement.

### D. The Father's Judicial Bias Argument Is Waived.

The father argues in his reply brief, for the first time, that the judge was biased against him because she allowed the mother to refresh her recollection while on the witness stand and found that portions of testimony by the father and the psychiatrist were not credible. "[W]e deem waived any arguments raised for the first time in a reply brief . . . ."[34]

Even if the father had not waived his argument, it is baseless. "[A] ruling against a party, even an incorrect ruling, is not evidence of judicial bias."[35] Judicial bias may arise during the course of judicial proceedings if "a judicial officer hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair."[36] Here, the judge's credibility findings were supported by substantial evidence and "were the result of opinions and attitudes formed in court by the evidence that the [court] heard."[37] And the judge only rejected the testimony that she found to be contradicted by other evidence or by the father's own testimony.

---

[34] *Barnett v. Barnett*, 238 P.3d 594, 602-03 (Alaska 2010); *see also Hymes v. DeRamus*, 222 P.3d 874, 888-89 (Alaska 2010) (applying waiver rule to pro se appellant).

[35] *Snider v. Snider*, 357 P.3d 1180, 1187 (Alaska 2015) (quoting *Peterson v. Swarthout*, 214 P.3d 332, 339 (Alaska 2009)).

[36] *Downs v. Downs*, 440 P.3d 294, 300 (Alaska 2019) (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

[37] *See Hanson v. Hanson*, 36 P.3d 1181, 1186 (Alaska 2001).

**E.** **It Was Error To Impose Rule 11 Sanctions Without Holding A Hearing And To Award Attorney's Fees Under AS 25.20.115 Without Making The Required Factual Findings.**

The father argues that the superior court erred by imposing a sanction of $1,000 and awarding attorney's fees. Following the parents' cross-motions for sanctions and attorney's fees, the court ordered the father to pay sanctions under Rule 11 based on a finding that he had engaged in bad faith and vexatious conduct by filing a motion for interim custody only days after the court issued its order granting the mother sole legal custody. The court also awarded the mother full attorney's fees for litigating the cross-motions to enforce and cross-motions for Rule 11 sanctions.

There were legal errors with regard to both the imposition of sanctions under Rule 11 and the award of attorney's fees. Before a superior court can impose sanctions under Rule 11, it must issue an order to show cause and provide notice and an opportunity to be heard at a hearing.[38] Here, the court did not afford the father a hearing where he could contest the imposition of the sanctions. Failure to do so was error.[39]

As to attorney's fees, the superior court erred by making the award under Rule 82. Attorney's fees awards in actions to modify, vacate, or enforce child custody agreements are governed by AS 25.20.115, not Rule 82.[40] And before a court can award attorney's fees under AS 25.20.115, it must make explicit findings both as to good faith and as to the parties' relative financial resources.[41] Here, the award entered against the

---

[38] Alaska R. Civ. P. 95(a); *Fox v. Grace*, 435 P.3d 883, 887 n.15 (Alaska 2018); *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1227-28 (Alaska 1992).

[39] *Luedtke*, 834 P.2d at 1227-28 (stating that imposition of Rule 11 sanctions without prior opportunity for hearing normally requires remand).

[40] *See Collier v. Harris*, 261 P.3d 397, 409-10 (Alaska 2011).

[41] *S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994) (noting that court "must make *explicit findings* as to the parties' relative financial resources and whether the

father included fees for litigating the cross-motions to enforce the custody order, so that portion of the award is governed by AS 25.20.115.[42]  But the court failed to make explicit findings regarding the relative financial resources of the parents.  Thus, it was error to award attorney's fees.

## V.    CONCLUSION

The superior court's decision is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this decision.

---

parties acted in good faith" (emphasis added)); *see also Rowen v. Rowen*, 963 P.2d 249, 257 (Alaska 1998).

[42]    The superior court's award also included attorney's fees for litigating the cross-motions for Rule 11 sanctions.  To the extent this award was made under Rules 11 and 95, it was error for failure to afford a hearing.  *See* Alaska R. Civ. P. 11 (prohibiting frivolous, baseless, and bad faith representations to court); Alaska R. Civ. P. 95(a) (permitting court to award attorney's fees as penalty for infraction of court rules, including Rule 11).