*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AUSTIN J. JOY JR. and REGENA S. JOY, | ) | |
| | ) | Supreme Court No. S-18669 |
| | ) | |
| Appellants, | ) | Superior Court No. 3AN-20-08662 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| RANDY HAHN and BEST SPLIT FIREWOOD, LLC, | ) | No. 7713 – August 30, 2024 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Paul J. Nangle, Paul J. Nangle & Associates, Anchorage, for Appellants. William D. Artus, Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

PATE, Justice.

## I.    INTRODUCTION

In a dispute between landowners and a commercial lessee, the superior court granted summary judgment in favor of the lessee and enforced a purchase option in the parties' lease agreement. The court later ordered specific performance, directing

the landowners to sell the real property according to the terms of the agreement. The landowners appeal the court's decision granting summary judgment and its award of specific performance. Because we conclude there were no genuine issues of material fact precluding summary judgment, the lessee was entitled to judgment as a matter of law, and the court did not err by awarding specific performance, we affirm the court's decisions.

## II.    FACTS AND PROCEEDINGS

### A.    The Agreement

Austin and Regena Joy jointly own property in Anchorage. In October 2017 Austin negotiated with a prospective commercial tenant, Randy Hahn, to lease that property for three years.

Hahn intended to use the property as the location for a firewood-splitting business he owns, Best Split Firewood, LLC (BSF). The parties disagree about whether Hahn mentioned BSF to Austin during their negotiations. Austin drafted a one-page, typed agreement for a lease beginning November 1, 2017, and ending October 31, 2020. The agreement stated in part:

> After such date occupants shall purchase said property at a discounted purchase price of $1,295,000 with $100,000 down payment for an owner financed price of $1,195,000. Terms of owner financing shall be 30 year amortized pay off in 20 years at a fixed interest rate of 6%. Official purchase & sale agreement to be signed at such time.

The agreement identified the parties as "Austin Jay Joy & Regena Joy here in [sic] called the owner and Randy A Hahn," followed by an underlined blank space, followed by the words, "here in [sic] called the occupant." When Austin and Hahn met to finalize the agreement, Hahn wrote the words "Best Split Firewood" into the underlined blank space. Austin and Hahn then signed the agreement. Regena was not present and did not sign the agreement.

Hahn then used the property as the location for his firewood-splitting business. In February 2019 Hahn purchased an adjacent lot from a third party to store

logs and timber for use in his business. Hahn later asserted that he would not have purchased the adjacent lot unless he had an option to purchase the property he was leasing from the Joys.

In October 2020 Hahn notified the Joys that BSF intended to exercise the purchase option in the agreement. Hahn deposited $100,000 toward the down payment in a trust account. But the Joys refused to sell the property to BSF. Austin later explained that the Joys did not believe the purchase option was enforceable, they "were not interested in" selling the property to Hahn, and they doubted Hahn could afford the purchase.

### B. Litigation Over The Agreement

Later in October 2020, Hahn filed a complaint in the superior court seeking a declaratory judgment confirming that the agreement contained a valid and enforceable purchase option that either Hahn "or his limited liability company," BSF, could exercise. The Joys filed an answer denying that the agreement contained a purchase option enforceable by BSF.

The Joys later offered to sell the property to Hahn personally. Their offer contained various drafting errors and terms that differed from the parties' agreement. Hahn rejected the Joys' offer in January 2021 and reiterated his desire for BSF to exercise the purchase option.

The Joys moved for summary judgment, arguing BSF was not entitled to enforce the purchase option. The motion was supported by Austin's assertion that he had not informed or consulted Regena before signing the agreement and that the Joys did not believe their agreement with Hahn contained an enforceable purchase option.

Hahn opposed and filed a cross-motion for summary judgment. He asserted that before signing the agreement, he told Austin that he intended to use the property "for [his] firewood business and [his] auto detailing/car wash business." Hahn also stated that he had told Austin he "wanted [his] firewood company to be on the lease" before signing and that Austin had "agreed that the company could be a lessee."

-3- **7713**

Hahn also offered his personal guarantee of BSF's financial obligations to the Joys in connection with the sale.

The Joys opposed Hahn's cross-motion, and Austin denied having discussed with Hahn whether his firewood company would be a party to the lease. Austin also denied that Hahn had told him he owned an LLC or had "said anything . . . about wanting to have any lessee on the lease other than himself personally." Hahn later filed an amended complaint naming BSF as an additional plaintiff.

## C.      Summary Judgment

The court granted Hahn's cross-motion for summary judgment and denied the Joys' motion. The court held that the purchase option was enforceable because it contained the "essential terms" of a purchase option for real property, including the price, the amount of the down payment, and the financing terms. The court further stated that "[b]ased on extrinsic evidence," it was "clear the parties intended to form a binding option agreement." The court concluded that the undisputed evidence showed that "there was a meeting of the minds regarding the option to purchase." It noted that the Joys offered to sell the property to Hahn, Hahn secured a down payment of $100,000, and Hahn purchased an adjacent lot. The court reasoned that the parties would not have taken these actions in the absence of a valid purchase option.

The court concluded that the contract "clearly memorialized" the names of the parties and that Hahn's "failure to include 'LLC' after his business name" to identify BSF was not "evidence that [Hahn] was doing business in a personal capacity rather than under his LLC" when he signed the agreement. The court also concluded that Hahn had not waived the right to exercise the purchase option by failing to accept the Joys' offer to sell the property to him personally, rather than to BSF. Finally, the court "provided 'gap fillers' to assist the parties in the performance of the option." These gap-filling provisions were:

> (1) Plaintiff Randy Hahn will personally guarantee the loan,
> in addition to Best Split Firewood, LLC, (2) Randy Hahn

will cover all closing costs . . . , (3) Randy Hahn will purchase title insurance, and (4) a standard deed of trust note and deed of trust will be provided.

**D.      Order To Sell The Property**

The superior court later ordered the parties to close the sale according to the terms of the summary judgment order, but they failed to do so. The Joys then moved for an order "vacating [the] prior grant of summary judgment and dismissing [Hahn and BSF]'s claims," citing the delay in closing the sale.[1] The Joys also argued that Hahn was not entitled to specific performance because he did not have "clean hands." Specifically, the Joys argued that Hahn had unfairly withheld relevant information from them, including details regarding liens that "could materially impair" their interest in the property. Hahn and BSF opposed the Joys' motion and moved to compel the Joys to sell the property and for other related relief. The Joys opposed the motion, reiterating their unclean-hands argument. The court denied the Joys' motion and granted Hahn and BSF's motion to compel.

The Joys appeal.

**III.   STANDARDS OF REVIEW**

"[We] will review de novo the trial court's grant of summary judgment based on the interpretation of a contract."[2] "When applying the de novo standard of

---

[1]      The Joys asserted that the court had discretion to vacate its summary judgment order and dismiss Hahn's claims because Hahn had not "complete[d] his part of the court's equitable decision." The Joys did not identify the source of the court's authority to grant this relief, but we construe their pleading as a motion for relief from judgment under Alaska Rule of Civil Procedure 60(b).

[2]      *Martech Constr. Co. v. Ogden Env't Servs., Inc.*, 852 P.2d 1146, 1149 (Alaska 1993).

review, we apply our independent judgment, 'adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[3]

The decision to award specific performance of a contract is "within the discretion of the trial court and will be reversed on appeal only where it is against the clear weight of the evidence."[4] "We will disturb a superior court's refusal to find unclean hands only if it is clearly erroneous," meaning that "we are 'left with a definite and firm conviction on the entire record that a mistake has been made.' "[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Granting Hahn's Motion For Summary Judgment.

The Joys argue that the superior court should not have granted summary judgment to Hahn and BSF because there were four unresolved material issues regarding the interpretation and enforceability of the agreement: (1) whether the agreement contained an enforceable purchase option, (2) whether BSF was entitled to exercise that purchase option, (3) whether Hahn waived any rights he or BSF had under the purchase option, and (4) whether Regena was a party to the agreement.[6] We agree

---

[3]     *Alaska Fur Gallery, Inc. v. Tok Hwang*, 394 P.3d 511, 514 (Alaska 2017) (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014)).

[4]     *Leisnoi, Inc. v. Stratman*, 835 P.2d 1202, 1207 (Alaska 1992) (quoting *Hausam v. Wodrich*, 574 P.2d 805, 809 (Alaska 1978)).

[5]     *Cook v. Cook*, 249 P.3d 1070, 1082 (Alaska 2011) (quoting *Cartee v. Cartee*, 239 P.3d 707, 712 (Alaska 2010)).

[6]     *See* Alaska R. Civ. P. 56(c) (stating superior court shall grant summary judgment when there is no "genuine issue as to any material fact" and moving party "is entitled to a judgment as a matter of law"); *Beal v. McGuire*, 216 P.3d 1154, 1162 (Alaska 2009) (explaining court usually may decide interpretation of contract language as matter of law, but factual issues may arise "if the meaning of the contract language depends on conflicting extrinsic evidence" and "[s]ummary judgment is inappropriate if there is an unresolved material factual dispute about the intent of the contracting parties").

with much of the superior court's analysis of these issues and affirm the grant of summary judgment.[7]

### 1. The agreement contained an enforceable purchase option.

The Joys argue their agreement with Hahn was ambiguous about whether the purchase option would be enforceable as written or would instead require further negotiation of the terms of purchase. They argue the statement "[o]fficial purchase & sale agreement to be signed at such time" creates ambiguity about whether the parties intended to negotiate additional terms in the future. We disagree.

The parties' agreement is enforceable because it contained all the essential terms of an option to purchase commercial real estate.[8] The agreement clearly identified the property, stated that an "official" agreement would be "signed" — rather than "negotiated" or "agreed upon" — at a later time, and articulated the central terms of the purchase. Those terms included the total price, the down payment amount, the identity of the party providing financing, the interest rate, and the amortization schedule. Under the circumstances, nothing more was necessary to form a binding purchase option.[9]

---

[7] *See Wielechowski v. State*, 403 P.3d 1141, 1152 & n.73 (Alaska 2017) (noting we may affirm superior court's grant of summary judgment on grounds different from those on which it relied).

[8] *See Rego v. Decker*, 482 P.2d 834, 837 & n.8 (Alaska 1971) (noting that "[c]ourts would impose too great a burden on the business community if the standards of certainty were set too high" in contract cases and explaining that "courts should fill gaps in contracts to ensure fairness where the reasonable expectations of the parties are fairly clear" (first citing RESTATEMENT OF CONTRACTS § 370 cmt. c (AM. L. INST. 1932) ("Apparent difficulties of enforcement due to uncertainty of expression may disappear in the light of courageous common sense."); and then citing 5A ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1174, at 283 (1964))).

[9] *See Slaymaker v. Peterkin*, 518 P.2d 763, 765-66 (Alaska 1974) (holding contract for sale of land was enforceable where parties agreed on purchase price and interest rate); *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1088-89 (Alaska 1985)

We recognize that the purchase option in this case is less detailed than the option we held was enforceable in *Rego v. Decker*.[10] In *Rego*, we affirmed the enforcement of a real estate purchase option that specified not only the price and payment terms, but also the form of deed and title insurance required and the effect of lease termination on the validity of the option.[11] However, *Rego* did not establish the minimum requirements for an enforceable option.[12] Instead, we simply decided that the option at issue in *Rego* fell within the range of enforceable agreements.[13] We conclude the agreement in this case also falls within that range and contains all the terms that are necessary to make a purchase option for real property enforceable.[14]

This case is unlike *Alaska Fur Gallery, Inc. v. Tok Hwang*, in which we affirmed the superior court's decision that a purchase option was not enforceable because — unlike the agreement in this case — the option specified neither the purchase price nor the method of determining the purchase price.[15] We concluded the

---

(holding contract for sale of land was enforceable where parties agreed on purchase price and acceptance of proposed financing terms); *City of Kenai v. Ferguson*, 732 P.2d 184, 188 (Alaska 1987) (holding rental agreement was enforceable because lease stated duration, which was "the 'essence of the contract,' " and affirming superior court's decision to impose "a reasonable fair market rent" as implied term of lease (quoting *Chaney v. Schneider*, 206 P.2d 669, 671 (Cal. App. 1949))); *cf. McCormick v. Chippewa, Inc.*, 459 P.3d 1172, 1178 (Alaska 2020) (reversing grant of summary judgment in contract case involving settlement agreement where "a reasonable person" could believe "there was no meeting of the minds" regarding scope of agreement, which was "an essential term"); *Magill v. Nelbro Packing Co.*, 43 P.3d 140, 143-44 (Alaska 2001) (affirming finding that purported profit-sharing agreement that did not set payment amounts was not enforceable).

[10] 482 P.2d at 837-38.

[11] *Id.* at 835-36, 838.

[12] *See id.* at 837-38.

[13] *See id.* at 838.

[14] *See id.* at 837-38.

[15] 394 P.3d 511, 515 (Alaska 2017).

option in *Alaska Fur Gallery* was not enforceable because it contained "no key terms," meaning that "enforcing the provision would go far beyond filling in one missing piece."[16] By contrast, the parties' agreement in this case specified all the essential terms and left out only comparatively minor details, such as the allocation of closing costs and the form of deed, which the superior court resolved with "gap fillers" in its order on summary judgment.

The Joys argue that this case is analogous to *Thrift Shop, Inc. v. Alaska Mutual Savings Bank*, in which we held that the parties had not formed an enforceable agreement when they orally stated their intention to enter into a written agreement in the future.[17] But *Thrift Shop*, like *Alaska Fur Gallery*, involved a vague agreement that was unenforceable because it specified neither the essential terms of the bargain nor a mechanism for resolving those terms if negotiations broke down.[18] Because the agreement in this case, which specified both the price and financing terms of the sale, was much more specific than the agreement in *Thrift Shop*, our decision in *Thrift Shop* does not control.

The Joys argue that the superior court's resort to gap-fillers demonstrated that the purchase option was not sufficiently clear for the court to hold it was a binding

---

[16] *Id.*; *see also id.* at 516 (holding agreement to negotiate is enforceable "only if it contains a 'specific way of resolving . . . differences,' as well as a 'basis for determining . . . breach or for giving an appropriate remedy.' " (footnotes omitted) (quoting *Davis v. Dykman*, 938 P.2d 1002, 1008-09 (Alaska 1997))).

[17] 398 P.2d 657, 658-59 (Alaska 1965).

[18] *See id.* at 659 (noting testimony that parties had agreed only on "the general formula under which the lease would be entered into"); *see also Sea Hawk Seafoods, Inc. v. City of Valdez*, 282 P.3d 359, 369 (Alaska 2012) (holding putative agreement to negotiate was not enforceable where we "would not be able to discern when the agreement to negotiate was breached"); *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 668 (Alaska 2002) (holding statement of intent "to begin the process of negotiating a contract as soon as possible" was not enforceable as promise to negotiate).

agreement. However, we have directed courts to fill similar gaps in a real estate contract when the contract stated the price and other essential terms, noting that filling such gaps is part of courts' "function of achieving justice between the parties without . . . requiring additional or unnecessary litigation."[19] We have approved of gap-filling at the summary judgment stage when the language of the contract specifies the essential terms of the bargain and makes the intent of the parties sufficiently clear.[20] The court's decision to provide similar gap-filling provisions in this case on summary judgment was therefore appropriate and consistent with its conclusion that the parties formed an enforceable option agreement.

The court's conclusion that there was a binding option agreement was based in part on the fact that the Joys offered to sell Hahn the property after litigation began. The Joys are correct that it was an error to rely on evidence of their offer in this way at the summary judgment stage. Drawing all reasonable factual inferences in the Joys' favor, the court should not have concluded that this offer demonstrated that the Joys intended to be bound by the purchase option; it would also be reasonable to assume they might have offered to sell the property even in the absence of such an option.[21]

---

[19]     *Rego*, 482 P.2d at 838-39 (citing *Tayloe v. Merchants' Fire Ins. Co.*, 50 U.S. (9 How.) 390, 405 (1850)).

[20]     *See City of Kenai v. Ferguson*, 732 P.2d 184, 185-86, 188 (Alaska 1987) (affirming decision granting summary judgment in which superior court concluded contract was enforceable and "a fair rental value should be implied" as term of lease that specified rent was "subject to re-negotiation"); *Slaymaker v. Peterkin*, 518 P.2d 763, 765 (Alaska 1974) (affirming decision granting summary judgment and noting court was free to resolve "uncertainties" in real estate contract "as to the starting of interest accumulation and the parties to the deed" to "enable the parties to fulfill their mutual expectations").

[21]     *See Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 449 (Alaska 2002) (explaining that when deciding summary judgment motions, "all reasonable inferences are made in favor of the non-movant").

However, because the parties' agreement contained on its face the essential terms of an enforceable option, the court's error was harmless.[22]

The court also suggested that extrinsic evidence of Hahn's conduct supported the conclusion that the Joys intended to form an enforceable purchase option. In particular, it cited Hahn's decisions to secure $100,000 for a down payment on the property and purchase an adjacent lot. Relying on this evidence to support a conclusion about the Joys' intent was error. While Hahn's actions might provide evidence of his own intent, they are minimally probative of the Joys' intent, particularly when drawing all reasonable factual inferences in the Joys' favor.[23] The court therefore should not have concluded at the summary judgment stage that these actions showed that the Joys intended to be bound by the option agreement. However, here too the court's error was harmless because the agreement contained on its face the essential terms of an enforceable purchase option.[24]

Finally, the Joys argue that the offer they sent to Hahn after litigation began was an offer of compromise that was not admissible to prove the validity of Hahn and BSF's claim.[25] Because we have concluded any error the superior court made by relying on the Joys' offer was harmless,[26] we do not decide whether the offer was

---

[22] *See* Alaska R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[23] *See Alakayak*, 48 P.3d at 447.

[24] *See* Alaska R. Civ. P. 61.

[25] *See* Alaska R. Evid. 408 ("Evidence of . . . furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.").

[26] *See* Alaska R. Civ. P. 61.

admissible for this purpose. The parties' agreement was enforceable because it contained on its face the essential terms of a purchase option for commercial real estate.

### 2. BSF was entitled to exercise the purchase option.

The Joys argue that the parties' agreement was ambiguous regarding whether BSF was a party, and thus the court erred by concluding on summary judgment that BSF could exercise the purchase option. Because Hahn personally guaranteed BSF's obligations as purchaser and the court adopted that guarantee in an order, we conclude that BSF was entitled to exercise the purchase option as Hahn's assignee. The dispute about whether BSF was a party therefore did not preclude summary judgment because it was not material to the resolution of Hahn's claim against the Joys.

As a party to the agreement, Hahn was entitled to exercise the purchase option in his own name. The agreement also did not contain any provision limiting the assignment of rights under the contract to another entity. We have not exhaustively defined the circumstances under which a party may assign contract rights to another entity, but we have approved of assignments of rights in other contexts.[27] Other jurisdictions allow assignment of contractual rights so long as assignment is not prohibited by the terms of the contract or another source of law and the assignment does not prejudice a non-assigning party.[28] This "modern approach" to assignment displaces

---

[27] *See, e.g.*, *Deal v. Kearney*, 851 P.2d 1353, 1356 (Alaska 1993) (allowing assignment of claims for indemnity, contribution, and subrogation); *Croxton v. Crowley Mar. Corp.*, 758 P.2d 97, 99 (Alaska 1988) (allowing reassignment of personal injury cause of action assigned to employer by operation of law back to deceased employee's estate); *Howarth v. First Nat'l Bank of Anchorage*, 596 P.2d 1164, 1168 (Alaska 1979) (concluding assignment of party's interest in proceeds of sale of real property was binding and served as valid consideration for subsequent oral contract).

[28] *See, e.g.*, *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 994 (Wash. 1994) ("Contracts are assignable unless such assignment is expressly prohibited by statute, contract, or is in contravention of public policy."); *Caglioti v. Dist. Hosp. Partners, LP*, 933 A.2d 800, 811 (D.C. 2007) ("We have noted

"traditional common-law restrictions on the alienability of contract rights," recognizing that those restrictions are a poor fit for the modern economy.[29] This approach is persuasive. Applying it to the circumstances of this case, we conclude that Hahn was free to assign his interest in the purchase option to BSF because assignment was not prohibited by the agreement or another source of law and the assignment did not prejudice the Joys.

Assigning a purchase option to a third party with fewer assets than the original optionee has the potential to cause prejudice to the optionor, but an assignment under the circumstances presented here would not cause that kind of prejudice. All else being equal, assigning the option from Hahn to BSF and requiring the Joys to sell to BSF rather than to Hahn personally could have prejudiced the Joys by limiting their recourse to Hahn's personal assets in the event of a default.[30] However, Hahn agreed on the record to provide a personal guarantee of BSF's obligations as purchaser. Hahn's

---

on several occasions that, as a general rule, claims are freely assignable."); *Ruiz v. City of N. Las Vegas*, 255 P.3d 216, 221 (Nev. 2011) ("While we recognize the general rule that contracts are freely assignable in the absence of language to the contrary, an assignment that has the effect of increasing the nonassigning party's obligations or risks under the contract is prohibited."); *see also* 6 AM. JUR. 2D *Assignments* § 15 (Westlaw database updated May 2024) ("Contract rights may be freely assigned unless an assignment would add to or materially alter the obligor's duty of risk, or there is a provision in the contract restricting its assignability, or the assignment would violate a statute. Thus, most rights under contracts are freely assignable." (footnotes omitted)); RESTATEMENT (SECOND) OF CONTRACTS § 317(2) (AM. L. INST. 1981) ("A contractual right can be assigned unless (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or (c) assignment is validly precluded by contract.").

[29]     *Rumbin v. Utica Mut. Ins. Co.*, 757 A.2d 526, 531 (Conn. 2000).

[30]     *See* AS 10.50.265 (providing that limited liability company members are generally not liable for company's debts).

guarantee, which the court adopted in an order, eliminated any potential prejudice to the Joys that assignment to BSF might have caused, leaving Hahn free to assign his personal right to purchase the property to BSF. Whether BSF was a party to the agreement thus did not materially affect Hahn's right to exercise the purchase option through BSF.

We disagree with the Joys that if Hahn and BSF were both parties to the lease agreement, they would have been required to exercise the option as joint purchasers. The Joys rely on two out-of-state decisions to support this theory.[31] But both these decisions rest on the principle that a party may not exercise a joint option without the consent of a fellow optionee.[32] Because Hahn consented to BSF's exercise of the option in the parties' agreement, allowing BSF to exercise that option without including Hahn as a joint purchaser is consistent with the reasoning of these cases.

Because we conclude that BSF's status as a party to the agreement was not material to the resolution of Hahn's claim against the Joys, we affirm the superior court's conclusion that the dispute regarding BSF's status as a party did not preclude summary judgment.

### 3. Hahn did not waive any rights he or BSF had under the purchase option.

The Joys also argue the court erred by rejecting their argument that Hahn waived any rights that he or BSF had to exercise the purchase option when he declined the Joys' offer to sell the property to him personally. They argue the court failed to draw reasonable factual inferences in their favor and improperly relied on a typographical error in their offer.

---

[31] *See In re Est. of Maguire*, 466 P.2d 358 (Kan. 1970), *modified on reh'g*, 476 P.2d 618; *Chournos v. Evona Inv. Co.*, 93 P.2d 450 (Utah 1939).

[32] *See In re Maguire*, 466 P.2d at 359, 361-62; *Chournos*, 93 P.2d at 452-53.

However, the court's conclusion that Hahn could reject the offer without waiving the purchase option did not depend on the typographical error it identified; instead, after considering all the evidence, the court explained that the Joys' offer was "poorly drafted and confusing — containing various mistakes throughout." The offer also contained material terms that differed from the express terms of the parties' original agreement, including provisions raising the monthly rent Hahn would owe between the expiration of the lease and the closing of the sale. Given the drafting errors and discrepancies, the court was correct to conclude that Hahn's refusal to accept the offer did not waive the purchase option, even when making all reasonable factual inferences in the Joys' favor.

### 4. It was not plain error to conclude the agreement was enforceable against Regena Joy.

The Joys also argue that Regena Joy was not a party to the agreement, and thus the purchase option was not enforceable against her. However, because the Joys failed to raise this or any "closely related" argument in the superior court, they have not preserved the issue for appellate review.[33] We therefore review the court's resolution of the issue only for plain error.[34] Because the record does not reveal any "obvious mistake" involving this issue,[35] we will not disturb the court's judgment.

---

[33] *See State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987) (stating "general rule" that we will not consider issues that appellant raises for first time on appeal unless trial court's resolution of issues was "plain error" or issues are (1) "not dependent on any new or controverted facts," (2) "closely related to the appellant's trial court arguments," and (3) issues that "could have been gleaned from the pleadings").

[34] *See Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981) (declining to review claims not preserved for appeal except for plain error and explaining "[p]lain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted").

[35] *See id.*

**B. The Superior Court Did Not Err By Awarding Specific Performance.**

Finally, the Joys argue that Hahn was not entitled to specific performance of the purchase option because Hahn acted with unclean hands in his dealings with them.[36] The Joys mistakenly rely on the standard that applies at the summary judgment stage: They argue the court erred by ordering specific performance because there were "genuine issues of material fact" regarding whether Hahn acted with unclean hands. However, whether Hahn acted with unclean hands was not among the issues the court decided on summary judgment. Instead, it was only *after* summary judgment had been granted that the Joys asked the court to consider whether unclean hands warranted relief from the judgment or precluded the court from ordering specific performance. Under these circumstances, the summary judgment standard did not apply, and the Joys had the burden to prove their allegation of unclean hands.[37]

To successfully raise an unclean hands defense, a party must show "(1) that the plaintiff perpetrated some wrongdoing; and (2) that the wrongful act related to the action being litigated."[38] An allegation of unclean hands is "untenable" without specific factual findings regarding the accuracy of allegations of wrongdoing.[39] We will not apply the unclean hands doctrine to prevent a party from obtaining equitable relief "if the party asserting unclean hands fails to show harm resulting from the alleged

---

[36]   *See Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 114 n.2 (Alaska 1990) ("Equity requires that those who seek it shall have acted fairly and without fraud or deceit as to the controversy in issue.").

[37]   *See* Alaska R. Civ. P. 60(b) (stating grounds for relief from judgment); *Gross v. Wilson*, 424 P.3d 390, 396 (Alaska 2018) ("[T]he burden of establishing a basis for relief . . . falls on the party seeking it."); *Cook v. Cook*, 249 P.3d 1070, 1082 (Alaska 2011) (stating party raising "unclean hands" defense bears burden to demonstrate it).

[38]   *Knaebel v. Heiner*, 663 P.2d 551, 554 (Alaska 1983).

[39]   *Id.*

wrongful conduct"[40] or if the party against whom the defense is raised "acted fairly and without fraud or deceit as to the controversy in issue."[41]

The Joys fail to identify any evidence in the record that Hahn deceived them regarding his financial condition, failed to disclose information he was obligated to share, or otherwise wronged them in connection with this case.[42] Hahn acknowledges that there is a money judgment against him in an unrelated matter, but that judgment did not arise from wrongdoing related to this case and the Joys have not shown that the judgment would prevent him from performing his obligations to them. The superior court therefore did not clearly err by declining to find that Hahn acted with unclean hands. Because the Joys have not raised any other argument against the court's decision to award specific performance, we affirm the court's decision.[43]

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[40]    *Windel v. Mat-Su Title Ins. Agency, Inc.*, 305 P.3d 264, 273 (Alaska 2013) (quoting *Cook*, 249 P.3d at 1082).

[41]    *Knaebel*, 663 P.2d at 554 (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)).

[42]    On appeal the Joys argue in their reply brief that Hahn violated the implied covenant of good faith and fair dealing by "failing to disclose material information about the substantial money judgment and tax liens against him." The Joys waived this argument by failing to raise it in their opening brief. *See Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010).

[43]    *See Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1087 (Alaska 1985) ("[S]pecific performance is an equitable remedy, the granting or withholding of which rests in the discretion of the trial court.").